UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GEORGE TOWN ASSOCIATES, SA,

Plaintiff,

-against-

ABAKAN, INC., AND MESOCOAT, INC.,

Defendant.

15 cv 3435 (DLC) (JLC)

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

---

Defendants, ABAKAN, INC. ("Abakan") and MESOCOAT, Inc. ("MesoCoat"). (collectively referred to as "Defendants"), as and for their answer to plaintiff, GEORGE TOWN ASSOCIATES, SA's ("Plaintiff") complaint alleges as follows:

1. Defendants deny each and every allegation contained in paragraph "1" of the Complaint.

2. Admit the allegations contained in paragraph "2" of the Complaint.

3. Admit the allegations contained in paragraph "3" of the Complaint.

4. Defendants are without knowledge of the allegations contained in paragraph "4" and, therefore, cannot admit nor deny the allegations, but demand strict proof thereof.

5. Admit the allegations contained in paragraph "5" of the Complaint.

6. Admit the allegations contained in paragraph "6" of the Complaint.

7. Defendants are without knowledge of the allegations contained in paragraph "7" and, therefore, cannot admit nor deny the allegations, but demand strict proof thereof.

8. Defendants deny each and every allegation contained in paragraph "8" of the Complaint and refer the interpretation of Exhibit "C" to this Honorable Court.

9. Defendants deny each and every allegation contained in paragraph "8" of the Complaint and refer the interpretation of Exhibit "D" to this Honorable Court.

10. Defendants are without knowledge of the allegations contained in paragraph "10" and, therefore, cannot admit nor deny the allegations, but demand strict proof thereof.

11. Defendants deny each and every allegation contained in paragraph "11" of the Complaint.

12. Defendants are without knowledge of the allegations contained in paragraph "12" and, therefore, cannot admit nor deny the allegations but demand strict proof thereof.

13. Defendants deny each and every allegation contained in paragraph "13" of the Complaint and refer the interpretation of the Secured Note to this Honorable Court.

14. Defendants deny each and every allegation contained in paragraph "14" of the Complaint.

15. Defendants deny each and every allegation contained in paragraph "15" of the Complaint and refer the interpretation of the Secured Note to this Honorable Court.

16. Defendants deny each and every allegation contained in paragraph "16" of the Complaint.

17. Defendants deny each and every allegation contained in paragraph "17" of the Complaint and refer the interpretation of the Secured Note, Guarantee and Security Agreement to this Honorable Court.

18. Defendants deny each and every allegation contained in paragraph "18" of the Complaint.

19. Defendants are without knowledge of the allegations contained in paragraph "19" and, therefore, cannot admit nor deny the allegations, but demand strict proof thereof.

## COUNT ONE – PROMISSORY NOTE

20. Defendants repeat, reiterate and reallege each and every response applicable to the allegations contained in paragraph "1" through "19" of the Complaint as though more fully set forth at length herein.

21. Defendants are without knowledge of the allegations contained in paragraph "21" and, therefore, cannot admit nor deny the allegations, but demand strict proof thereof.

22. Admit the allegations contained in paragraph "22" of the Complaint.

23. Defendants are without knowledge of the allegations contained in paragraph "23" and, therefore, cannot admit nor deny the allegations, but demand strict proof thereof.

24. Defendants deny each and every allegation contained in paragraph "24" of the Complaint.

25. Defendants deny each and every allegation contained in paragraph "25" of the Complaint.

26. Defendants deny each and every allegation contained in paragraph "26" of the Complaint.

27. Defendants deny each and every allegation contained in paragraph "27" of the Complaint.

## COUNT TWO – PROMISSORY NOTE

28. Defendants repeat, reiterate and reallege each and every response applicable to the allegations contained in paragraph "1" through "27" of the Complaint, as though more fully set forth at length herein.

29. Defendants are without knowledge of the allegations contained in paragraph "29" and, therefore, cannot admit nor deny the allegations but demand strict proof thereof.

30. Admit the allegations contained in paragraph "30" of the Complaint.

31. Defendants are without knowledge of the allegations contained in paragraph "31" and, therefore, cannot admit nor deny the allegations, but demand strict proof thereof.

32. Defendants deny each and every allegation contained in paragraph "32" of the Complaint.

33. Defendants deny each and every allegation contained in paragraph "33" of the Complaint.

34. Defendants deny each and every allegation contained in paragraph "34" of the Complaint.

35. Defendants deny each and every allegation contained in paragraph "35" of the Complaint.

### COUNT THREE – GUARANTEE

36. Defendants repeat, reiterate and reallege each and every response applicable to the allegations contained in paragraph "1" through "35" of the Complaint as though more fully set forth at length herein.

37. Admit the allegations contained in paragraph "37" of the Complaint.

38. Defendants deny each and every allegation contained in paragraph "38" of the Complaint.

### COUNT FOUR – SECURITY INTEREST

39. Defendants repeat, reiterate and reallege each and every response applicable to the allegations contained in paragraph "1" through "38" of the Complaint as though more fully set forth at length herein.

40. Defendants are without knowledge of the allegations contained in paragraph "40"

and, therefore, cannot admit nor deny the allegations, but demand strict proof thereof.

41. Defendants deny each and every allegation contained in paragraph "41" of the Complaint.

42. Defendants deny each and every allegation contained in paragraph "42" of the Complaint.

## COUNT FIVE – INJUNCTIVE RELIEF

43. Defendants repeat, reiterate and reallege each and every response applicable to the allegations contained in paragraph "1" through "42" of the Complaint as though more fully set forth at length herein.

44. Defendants deny each and every allegation contained in paragraph "44" of the Complaint and refer the interpretation of the Secured Note to this Honorable Court.

45. Defendants deny each and every allegation contained in paragraph "45" of the Complaint.

46. Defendants deny each and every allegation contained in paragraph "46" of the Complaint.

47. Defendants deny each and every allegation contained in paragraph "47" of the Complaint.

48. Defendants deny each and every allegation contained in paragraph "48" of the Complaint.

49. Defendants deny each and every allegation contained in paragraph "49" of the Complaint.

50. Defendants deny each and every allegation contained in paragraph "50" of the Complaint.

## COUNT SIX – RECEIVER

51. Defendants repeat, reiterate and reallege each and every response applicable to the allegations contained in paragraph "1" through "50" of the Complaint as though more fully set forth at length herein.

52. Defendants are without knowledge of the allegations contained in paragraph "52" and, therefore, cannot admit nor deny the allegations, but demand strict proof thereof.

53. Defendants deny each and every allegation contained in paragraph "53" of the Complaint.

54. Defendants deny each and every allegation contained in paragraph "44" of the Complaint and refer the interpretation of the Security Agreement to this Honorable Court.

55. Defendants deny each and every allegation contained in paragraph "50" of the Complaint.

56. Defendants deny each and every allegation contained in paragraph "50" of the Complaint.

57. Defendants deny each and every allegation contained in paragraph "50" of the Complaint.

## **AFFIRMATIVE DEFENSES**

### FIRST AFFIRMATIVE DEFENSE

58. Plaintiff's claims are barred, because it prevented Defendants' performance and repayment of the promissory note.

### SECOND AFFIRMATIVE DEFENSE

59. Plaintiff's claims are barred by its breach of the implied covenant of good faith and fair dealing.

### THIRD AFFIRMATIVE DEFENSE

60. Plaintiff's claims are barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

61. Plaintiff's claims are barred by the doctrine of equitable estoppel.

### FIFTH AFFIRMATIVE DEFENSE

62. Plaintiff claims for equitable relief are improper, because Plaintiff has an adequate remedy at law.

### SIXTH AFFIRMATIVE DEFENSE

63. Plaintiff fails to state a cause of action upon which relief can be granted.

### SEVENTH AFFIRMATIVE DEFENSE

64. Defendant is entitled to a set-off for the damages caused by Plaintiff's improper conduct against the amounts alleged to be owed to the Plaintiff, for the reasons set forth in detail in the Counterclaim set forth in Counterclaim paragraphs "1" through "31" herein.

### EIGHTH AFFIRMATIVE DEFENSE

65. Plaintiff's claims are barred, in whole or in part, because the Plaintiff failed to satisfy all conditions precedent to maintaining this action.

### NINTH AFFIRMATIVE DEFENSE

66. Plaintiff's claims are barred, in whole or in part, by the doctrine of wavier.

## COUNTERCLAIM

Defendants/Counter-Plaintiffs, Abakan, Inc. ("Abakan") and MesoCoat, Inc. ("MesoCoat"), by and through undersigned counsel, and pursuant to Rule 13 of the Federal Rules of Civil Procedure, hereby sue Plaintiff/Counter-Defendant George Town Associates, S.A. ("George Town"), and allege as follows:

### Introduction

1. This is a compulsory Counterclaim. In addition, this Court has jurisdiction over this matter pursuant to diversity of citizenship of the parties under 28 U.S.C. § 1332. The matter in controversy exceeds the sum of $75,000 exclusive of interest, attorney's fees and costs.

2. The Counter-Defendant lender, George Town, is controlled by an individual named John Xynos ("Xynos"). Xynos controls other entities which also were lenders to Defendant/Counter-Plaintiff Abakan. As set forth below, George Town, through Xynos and his affiliated companies, orchestrated a default of the loan which is the subject of this case by preventing Defendant's performance and ability to repay or refinance the loan. As a result, George Town violated the implied covenant of good faith and fair dealing in the loan agreements, causing not only the default, but damage to Abakan.

### Factual Background

3. Abakan's primary business focus is its investment in MesoCoat, a company which develops and manufactures coating materials to reinforce metal products. Abakan is an 88% owner of MesoCoat. MesoCoat provides various types of products. One line of products, known as PComP, involves the development of special powders which, through an 11-step process, are manufactured into a steel coating for various uses, including pipes and machinery. Its product provides an alternative to the use of chrome in various machinery and provides improved

functionality. Another line of products, known as Cermaclad, creates a coating which provides corrosive resistance and wear and tear resistance.

## Xynos Invests in Abakan

4. During mid to late 2009, Xynos orally agreed with Abakan, through its CEO, Robert Miller, that he would invest $5 million in Abakan in return for shares of the company. Xynos ultimately received over 9 million shares in exchange for his commitment to invest the $5 million in Abakan. The subject shares were issued to various entities owned and/or controlled by Xynos at his direction.

5. In or about April 2010, Xynos increased his total investment commitment in Abakan to $7 million.

6. In January 2011, after investing approximately $4.3 million out of the $7 million promised, Xynos reneged on his commitment. Instead, he demanded that Abakan accept the remaining amounts in the form of convertible loans rather than investments. Left with no options because of Xynos' sudden change of position and the company's need for further capital based on its reliance of Xynos' commitment, Abakan was forced to agree. As part of these loans, Xynos directed Sonoro Invest, N.A. ("Sonoro") to loan Abakan $1.7 million. Xynos further caused Joe Eberhard to loan Abakan $500,000. Abakan executed convertible promissory notes in connection with these loans.

7. On several subsequent occasions, both Sonoro and Eberhard amended their promissory notes with Abakan, extending maturity dates and changing terms of the notes. On each such occasion, although Xynos was not the managing agent of Sonoro, Xynos was the individual who was the principal negotiator and contact person with whom Abakan regarding these amended notes with Sonoro and Eberhard.

## The George Town Loan

8. From July through August 2013, Xynos provided five loans to Abakan totaling $580,000 documented by several different promissory notes.

9. On September 17, 2013, Xynos' attorney, Maurice Hryshko, notified Abakan that Xynos was assigning the notes totaling $580,000 to "an affiliate, Kyrtos, Ltd." and wanted to consolidate the notes into a single promissory note that would be secured by the assets of MesoCoat, which far exceeded the amount of the loan.

10. Uppn information and belief, at all material times, Kyrtos was owned and controlled by Xynos.

11. For several months until the secured loan documents were signed on October 30, 2013, John Xynos, with his attorneys, were the only individuals negotiating the terms of the new secured note on behalf of Kyrtos.

12. The total amount of the new combined loan was $1,341,963. This amount represented the prior $580,000 loaned by Xynos personally, an additional $100,000 loaned by Xynos personally, interest, and an additional $620,000 loaned by Kyrtos, the entity controlled by Xynos. Xynos further required that the loan be secured by the valuable assets of Mesocoat. Accordingly, loan documents were executed by Abakan regarding this secured loan.

13. On April 28, 2014, Xynos caused Kyrtos to assign its secured loan with Abakan to the Counter-Defendant, George Town, another entity that Xynos controls, upon information and belief (the "George Town Note"). The George Town Note was convertible and had a maturity date of April 27, 2015. Following the assignment to George Town, Xynos continued to communicate directly with Abakan on the basis that he owned and controlled George Town. The business relationship did not change and, in fact, Abakan was informed that the assignment to

George Town was simply a "name change" and nothing else.

14. In July and August 2014, Abakan attempted to negotiate a global agreement regarding its loans from George Town, Sonoro and Eberhard. Although the agreement was never finalized, throughout the months of negotiations, Xynos was the principal negotiator on behalf of all three lenders.

## The Sonoro Litigation

15. On October 1, 2014, Sonoro filed a lawsuit against Abakan for breach of its promissory note in the United States District Court for the Southern District of Florida[1] (the "Florida Litigation").

16. During the Florida Litigation, Abakan agreed to the entry of a Consent Preliminary Injunction which enjoined Abakan from certain limited conduct if the conduct was outside its ordinary course of business, without first obtaining Sonoro's consent, which Sonoro could not unreasonably withhold.

17. In early April 2015, with the George Town Note coming due on April 27, Abakan began negotiations with different lenders to refinance the George Town Note.

18. Abakan believed that refinancing existing debt was not enjoined by the Consent Preliminary Injunction in the Florida Litigation and further was not outside the scope of Abakan's ordinary course of business. However, in an abundance of caution, and so as to not unwillingly violate the Consent Preliminary Injunction, on April 21, 2015, Abakan notified Sonoro that it intended to refinance the loan to George Town, due on April 27, 2015, by means of a new loan in the amount of $1.5 million to be used specifically for repayment to George Town.

19. On April 23, 2015, in order to cause a delay and manufacture a default of the George

---

[1] *Sonoro Invest, SA v. Abakan, Inc.*, Case No.: 14-23640-CIV-Gayles/Turnoff

{10649/00399620.1}11

Town Note so that George Town could obtain MesoCoat's valuable assets (which far exceeded the amount of the George Town Note) through foreclosure, George Town, through Xynos, caused Sonoro to file an emergency motion for contempt seeking to block the George Town refinancing. On April 24, 2015, the Florida Court issued an Order requiring the parties to maintain the status quo until an April 29, 2015 hearing date. Thus, George Town, in bad faith, successfully prevented Abakan from repaying its debt, which was due on April 27, 2015.

20. On April 27, 2015, George Town provided Abakan with notice of its default and a two business day period to cure commenced.

21. At the hearing on April 29, 2015, Sonoro argued its consent was required to refinance the George Town loan. Sonoro did not disclose its affiliation with George Town.

22. Abakan's counsel brought copies of proposed loan documents to the hearing. The loan documents were almost identical to the terms of the George Town Note in all material respects.

23. Before the commencement of the April 29, 2015 hearing, the Court instructed the parties to attempt to resolve their dispute. After a lengthy discussion, the parties placed a proposed settlement on the record in open court. The parties advised the Florida Court that Sonoro and Abakan had agreed on terms of a settlement agreement, but that Sonoro's consent to the refinancing loan was required to complete a settlement. Sonoro's counsel advised that Sonoro wanted to know the identity of Abakan's lender and would provide notice of its decision to consent by 5:00 p.m. the following day. If Sonoro consented, then the parties would advise the Court that the matter was settled. If Sonoro did not consent, then the Court reserved a May 1 hearing date for the parties to return for a hearing.

24. At 4:45 p.m. the following day, April 30, 2015, Sonoro consented to Abakan's

lender but provided unreasonable additional conditions upon the refinancing loan, including a demand that the refinancing loan be unassignable, a prohibition *not* contained in the George Town Note, and a demand that not one term of the refinancing loan with the third party be changed, otherwise Sonoro would withdraw its consent. This was a transparent bad faith attempt to further delay Abakan from obtaining refinancing.

25. Accordingly, the parties returned for the May 1 hearing. The parties continued settlement negotiations with the assistance of the magistrate judge, but Sonoro continued to refuse to provide its consent.

26. George Town filed this action on May 4, 2015. By virtue of the delays George Town, through Xynos, caused in the Sonoro case, George Town demanded hundreds of thousands of dollars in a default payment alone and to foreclose on the valuable MesoCoat collateral, among other damages. George Town obtained a preliminary injunction on May 6, 2015.

27. Having accomplished the goal of preventing Abakan from refinancing the George Town Note, causing an alleged default of the George Town Note, filing a foreclosure lawsuit and obtaining a preliminary injunction, Sonoro then agreed to settle its litigation on May 19, 2015.

28. As a direct and proximate result of George Town's actions, Defendants have been damaged in an amount not presently ascertainable, but believed to exceed $1,000,000.00. These damages include but are not limited to lost profits, lost enterprise value, reputational damages, operational damages, business interruption damages, fees, costs and expenses.

29. Accordingly, Abakan brings this action for breach of the implied covenant of good faith and fair dealing. Through an assignment by John Xynos through Kyrtos, George Town obtained a Secured Convertible Promissory Note dated April 28, 2014 in the principal amount of

$1,341,963.34 (the "Secured Note") and a Subsidiary Guarantee executed by MesoCoat. The Secured Note and Subsidiary Guarantee were issued in connection with the April 28, 2014 Securities Exchange Agreement entered into by Abakan, MesoCoat and George Town.

30. George Town breached the implied covenant of good faith and fair dealing with respect to the Secured Note, Subsidiary Guarantee, and Securities Exchange Agreement by intentionally preventing Abakan's performance under those agreements.

31. George Town acted in bad faith to purposefully cause the alleged breaches identified in the Complaint.

WHEREFORE, Defendants demand judgment as follows:

a. Dismissing Plaintiff's complaint;

b. On its counterclaim, a money judgment in an amount not presently ascertainable but believed to exceed $1,000,000.00; and

c. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
May 27th, 2015

Law Offices of Steven E. Rosenfeld, P.C.

_____
Steven E. Rosenfeld, Esq. (SER-5961)
*Attorneys for Defendant-*
*Abakan, Inc.*
767 Third Avenue, 30th Floor
New York, New York 10017
O. (212) 953-1600

To: Douglas Gross, Esq
Goetz Fitzpatrick, LLP
*Attorneys for Plaintiff*
One Penn Plaza
New York, New York 10119
O. (212) 695-8100