UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

GEORGE TOWN ASSOCIATES, S.A.,                      Case No.  15-CV-3435 (DLC)(JLC)
                              Plaintiff,
            v.
ABAKAN, INC. and MESOCOAT, INC.,
                              Defendant.

_____


**MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS & FOR SUMMARY
JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION SEEKING TO JOIN
JOHN XINOS AS A PARTY TO THIS ACTION**

Steven E. Rosenfeld, Esq.
Law Offices of Steven E. Rosenfeld, PC
767 Third Avenue, 30th Floor
New York, New York 10017
Telephone No.: (212) 953-1600
E-mail: steven@lawrosenfeld.com
*Attorneys for Defendants*
*Abakan, Inc. & MesoCoat, Inc.*

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................. iii-v

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND................................................................................ 3

ARGUMENT....................................................................................................... 8

POINT I

      PLAINTIFF'S MOTION FOR TO DISMIS SHOULD BE DENIED
      IN ITS ENTIRETY................................................................................... 8

      a.     Motion to Dismiss Standard of Review ....................................... 8

      b.     Plaintiff's argument regarding the breach of an implied covenant of good faith
          and for dealing is erroneous……………………………………………………..9

      c.     Plaintiff's argument that Defendants damages herein are limited to any security which
          was posted with respect to the preliminary injunction in the Sonoro Litigation is
          incorrect, inasmuch as Plaintiff was not a party to the Sonoro Litigation…………10

      d.     Plaintiff's motion to dismiss Defendants' counterclaim on the basis that it has not
          acted in bad faith or dealt unfairly must be denied as this is an issue of fact which is
          not properly considered on a motion to dismiss…………………………………..12

      e.     Defendants' claims are not barred by waiver………………………………..14

      f.     Defendants' counterclaim is not barred by the doctrine of collateral estoppel………16

POINT II

      PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED IN ITS
      ENTIRETY............................................................................................ 18

POINT III

      DEFENDANTS' CROSS-MOTION TO ADD XINOS AS A PARTY SHOULD BE
      GRANTED ........................................................................................... 23

POINT IV

      PLAINTIFF'S MOTION SEEKING A STAY OF DISCOVERY SHOULD BE DENIED IN
      ITS ENTIRETY.................................................................................... 24

CONCLUSION................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Adickes v. S.H. Kress & Co.,*
398 U.S. 144, 158-59 (1970) ...................................................... 18

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 250 (1986) ...................................................... 18, 20

*Ashcroft v. Igbal,*
556 U.S. 662 (2009) ............................................................. 8

*Bedell Co. v. Harris,*
240 N.Y.S.2d 550 (1st Dep't 1930) ........................................... 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555-556 (2007) ................................................. 8

*Crystalline H[2]O, Inc. v. Orminski,*
105 F.Supp.2d 3 (N.D.N.Y.) ................................................... 20

*Cimerring v. Merrill Lynch Mtge. Invs., Inc.,*
35 Misc.3d 1242(A), 953 N.Y.S.2d 549 (Sup. Ct. Queens Cnty. 2012) ... 16

*Dalton v. Educ. Testing Serv.,*
87 N.Y.2d 384, 389, 663 N.E.2d 289, 639 N.Y.S.2d 977 (1995) ............ 16

*Duration Municipal Fund, LP v. JP Morgan Securities, Inc.,*
25 Misc.3d 1203(A), 899 N.Y.S.2d 59 (Sup. Ct. N.Y. Cnty. 2009) .......... 9

*Eastwav Const. Corp. v. City of N.Y.,*
762 F.2d 243, 249 (2d Cir. 1985) ............................................... 19

*Ford v. Reynolds,*
316 F. 3d 351, 354 (2d Cir. 2003) .............................................. 18

*George C Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,*
554 F.2d 551 (2d Cir. 1977) .................................................... 19

*Goldman v. Beiden,*
754 F.2d 1059 (2d. Cir. 1985) .................................................. 8

*Harris v. Provident Life and Acc. Ins. Co.,*
310 F.3d 73 (2d Cir. 2002) ...................................................... 9, 10

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK), Ltd.,*
230 F.3d 549, 556 (2d Cir. 2000) ............................................... 17

*Hellstrom v. U.S. Dep't of Veteran Affairs,*
201 F.3d 94, 97(2d Cir 2000) ....................................................... 19

*Horowitz v. American Intern. Group, Inc.,*
2010 WL 3825737 (S.D.N.Y. 2010) .................................................. 9

*In re Billings,*
838 F.2d 405, 408 (10th Cir. 1988) .................................................. 13

*In re Fickey,*
23 B.R. 586, 590 (Bankr. E.D. Tenn. 1982) ........................................ 13

*In re Shurbier,*
134 B.R. 922, 927 (Bankr. W.D. Mo. 1991) ......................................... 13

*In re Spencer Kellogg & Sons,*
52 F.2d 129 (2d Cir. 1931) ........................................................... 11

*In re Woods Farmers Co-op. Elevator Co.,*
No. 89-05299, 1991 WL 1301305, at *4 (Bankr. D.N.D. May 8, 1991) ............ 13

*Johnson v. Priceline.com, Inc.,*
711 F.3d 271, 275 (2d Cir. 2013) ..................................................... 8

*Johnson v. Smithsonian Inst.,*
189 F.3d 180 (2d Cir. 1999) .......................................................... 23

*Knight v. U.S. Fire Ins. Co.,*
804 F.2d 9, 11 (2d Cir. 1986) ......................................................... 18

*McCarthy v. Dun & Bradstreet Corp.,*
482 F.3d 184 (2d Cir. 2007) .......................................................... 8

*Miller v. Wolpoff & Abramson, L.L.P.*
321 F.3d 292, 303 (2d Cir 2003) ...................................................... 19

*Murphy v. Gallagher,*
761 F.2d 878 (2d Cir. 1984) .......................................................... 16

*National Maritime Union v. Commerce Tankers Corp.,*
411 F.Supp. 1224 (S.D.N.Y. 1976) ................................................... 10

*Outback/Empire, Ltd. P'ship v. Kamitis, Inc.,*
35 A.D.3d 563, 825 N.Y.S.2d 747 (2d Dep't 2006) ................................. 9

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.,*
309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003) ................................ 9

*Salvage Process Corp. v. Acme Tank Cleaning Process Corp.,*
104 F.2d 105 (2d Cir. 1939) ………………………………………………….. 10

*T.M. Real Estate Holding, LLC v. Stop & Shop Supermarket Co., LLC,*
2013 U.S.Dist. LEXIS 22448 (S.D.N.Y. 2013) …………………………………… 17

*Walden v. Sanitation Salvage Corp.,*
2015 U.S. Dist. Lexis 40280 (S.D.N.Y. 2015) …………………………………… 19

**Other Authorities**

**Page(s)**

Fed. R. Civ. P. 12(b)(6) …………………………………………………… 8

Fed. R. Civ. P. 56(c) …………………………………………………… 18

Fed. R. Civ. P. 56(e) …………………………………………………… 18

F.R.C.P.  56(d) …………………………………………………… 6, 19

F.R.C.P. 19(a) ………………………………………………….. 23

F.R.C.P. 20(a)(2) …………………………………………………… 23

# PRELIMINARY STATEMENT

In what can only be described as a gross mischaracterization, Plaintiff claims that this is nothing more than a simple non-payment proceeding under the terms of a Promissory Note. Plaintiff is wrong. As will be more fully detailed below in the accompanying declarations and exhibits, this involves a scheme by one John Xinos in connection with investments into Defendant Abakan. It strikes me as most appropriate to quote from the famous 18th century Scottish author, Sir Walter Scott, who stated, "Oh what a tangled web we weave when we practice to deceive." Plaintiff moves to dismiss Defendants' counterclaims, arguing that even taken as true (as the Court must), Defendants' allegations that Plaintiff colluded with Sonoro and Xinos to prevent Defendants from refinancing the debt alleged to be owed herein with the sole purpose of unjustly taking over Defendants' businesses, Defendants failed to state a cause of action herein. Plaintiff makes this argument through a series of convoluted contortions and misapplications of the law, all of which are wholly and woefully without merit.

Moreover, prior to the commencement of any discovery, Plaintiff also moves for summary judgment claiming that this the "rarest of cases" where Defendants are not so much as entitled to discovery regarding their claims that Plaintiff wrongfully colluded with Xinos and Sonoro in a wrongful attempt at taking over Defendants' businesses. The erroneous and awkward nature of Plaintiff's motion for summary judgment is particularly highlighted by the fact that the Court must take Defendants' claims regarding Plaintiff's collusion, which constitutes the basis for their affirmative defenses, as true. Thus, since the Court must take the underlying claims which constitute the basis for Defendants' affirmative defenses as true, there

can be no issue of fact as to whether Defendants have established their affirmative defenses, such are established as a matter of law.

Further, as is more fully set forth herein, the intimate connection between Plaintiff, Sonoro, and Xinos is exhibited by the following undisputed facts: (1) George Town and Sonoro are represented by the same counsel; (2) George Town has asserted several defenses here which are only available to Sonoro; and (3) Plaintiff has taken positions here contrary to its own self interest in order to protect Xinos from liability. These assertions are evidenced by both the arguments made by Plaintiff and the exhibits attached to this motion. Further discovery would prove Defendants' assertions. Indeed, this is the very reason Plaintiff make their motion for summary judgment prematurely – so Defendants cannot obtain discovery proving its defenses and counterclaim.

So as to be able to fully recover the damages that have been inflicted against them herein, Defendants cross-move to joint Xinos as a necessary party to this action. Therefore, for the reasons set forth herein, it is respectfully submitted that Plaintiff's motion should be denied in its entirety and Defendants' cross-motion should be granted in its entirety.

## FACTUAL BACKGROUND

Preliminarily, the facts contained in this factual background are also contained in Defendants' counterclaim, which is currently the subject of a motion to dismiss. Thus, for the purposes of this motion, all of the facts alleged therein must be taken as true by the Court.

Defendants are corporations engaged in the business of creating and developing nanocomposite materials for applications in the oil and gas, petrochemical, mining, aerospace, energy, infrastructure, and processing industries. Abakan is a publically traded company and owns approximately 88% of Mesocoat. (See Declaration of Abakan's President, Robert Miller, annexed hereto (the "Miller Declaration")).

Upon information and belief, Plaintiff is an investment firm. Plaintiff is controlled by John Xinos, the individual who negotiated the loans which comprise the Note Plaintiff alleges is due. The loans were originally to be a $7,000,000.00 investment into Defendants' business by Mr. Xinos. However, after investing approximately $4,000,000.00 as equity, Mr. Xinos decided to issue various convertible loans to Defendants in lieu of the remaining $3,000,000.00 equity investment. Mr. Xinos directly then made a series of relatively small loans to Defendants, contained in a series of promissory notes. Mr. Xinos then began to direct that these loans be restated in notes to Kyrtos. Importantly, Plaintiff now admits that Mr. Xinos is Kyrtos' "Director." (See Plaintiff's Memo of Law Page "16"). Thereafter, following some time, also upon Mr. Xinos' specific direction, on April 28th, 2014, after various negotiations with Plaintiff, through Mr. Xinos, Defendants entered into various agreements with Plaintiff whereby an outstanding loan due Kyrtos Limited was assigned to Plaintiff, Sonoro, and Joe T. Eberhard. (See Exhibits "A", "B", and "C")(the Amended and Restated Security Agreement, the

Convertible Promissory Note, and the Subsidiary Agreement are referred to herein as the "Underlying Agreements").

Thus, it is undisputed that Plaintiff did not actually loan Defendants any of the funds in question. Funds were loaned through a series of promissory notes, approximately $689,000.00, which all originated from John Xinos. (See Exhibit "V"). After assignment, the remainder was funded by an entity admittedly controlled by Mr. Xinos known as Kyrtos Limited ("Kyrtos"). At Mr. Xinos' specific request, this loan was then further assigned again to Plaintiff. (See Plaintiff's Exhibits "A," "B," and "C"). Plaintiff has brought suit under that assignment.

Hence, as it is patently obvious, these loans were really negotiated and extended by one person, to wit: John Xinos[1]. Pointedly, Mr. Xinos was directly copied on all correspondence regarding the negotiation of the loans and was represented by Maurice Hryshko, Esq. in this respect. (See Exhibit "L"). Mr. Xinos' involvement in the procurement of these loans is detailed in Mr. Hryshko's correspondence, wherein he specifically states that it is Mr. Xinos who is negotiating the terms of the agreements and even goes so far as to state "if MesoCoat makes a claim against their insurance policy for the loss, then under the provision of the Security Agreement, Mr. Xinos would have the right to demand the payment from the insurance company." (See Exhibit "L")(bate stamp # "DEF0009"). It is manifest that the foregoing evidences that both Plaintiff and Sonoro are controlled by Mr. Xinos.

Mr. Xinos, knowing that the value of Defendants' businesses far exceeds the debt alleged to be owed to Plaintiff, contrived this alleged default in an attempt to enforce the alleged security agreement and take over Defendants' businesses resulting in a windfall to Plaintiff and more importantly to him personally. As both the counterclaim and the proposed Third Party Complaint evidence, Abakan's President, Robert Miller, following the execution of both

---

[1] As set forth above, the $7,000,000.00 in funds Mr. Xinos agreed to invest were supposed to be equity investments.

Agreements, at issue, learned that Mr. Xinos is frequently involved in less than reputable dealings and, upon information and belief, is under investigation by the Securities and Exchange Commission.

As is his *modus operandi*, Mr. Xinos colluded with Plaintiff in attempting to contrive this default by utilizing a preliminary injunction obtained in another action in Florida between Sonoro Invest S.A. (another of by Mr. Xinos' companies) and Abakan entitled <u>Sonoro Invest S.A. v. Abakan, Inc.</u>, in the Southern District of Florida under Case No. 14-23640-CIV. (the "Sonoro Litigation"). In the Sonoro Litigation, Plaintiff and Mr. Xinos colluded with Sonoro in having it claim that the refinance of the alleged debt owed herein was a violation of the preliminary injunction (even though it was not), so that a default would be created and Mr. Xinos, through Plaintiff, could then take over Defendants' businesses. (See Exhibit "B" page "4" lines "6-9").

The fact that Plaintiff never wanted Defendants to pay the alleged debt is established by its deficient Notice of Default. (See Exhibit "D"). The Notice of Default sent by Plaintiff did not contain a phone number, fax number, or e-mail address for Plaintiff. All that was listed was an address in Panama. Abakan immediately contacted David Song, Esq. (who is listed as Plaintiff's attorney and contact person in the Underlying Agreements). Mr. Song claimed he no longer represented Plaintiff. Abakan then wrote Plaintiff attempting to resolve the matter and were, at that point, referred to litigation counsel herein. (See Exhibit "E").

The Underlying Agreements envisions Defendants having a two (2) day cure period to cure any alleged default. Plaintiff did not grant Defendants this opportunity, inasmuch as the Notice of Default was deficient because it did not provide any means to contact the Plaintiff within the two day cure period. As also detailed in the opposition to Plaintiff's specious

motion, Defendant's counsel revealed for the first time, on July 10th, 2015, that Sonoro's counsel Robins Kaplan concealed the fact that in addition to representing Sonoro, he is also counsel to Plaintiff herein (and previously one of Doug Gross' partners at his prior Firm).

Moreover, to the extent that Plaintiff claims that the 10Q was filed late and this caused a default under the Note, these claims are false. Defendants did not file the 10Q under the assumption that the Sonoro Litigation would settle and that would alter the debt reportable. Sonoro then delayed negotiations (on instruction of Plaintiff and Xinos) which caused the 10Q to be filed late.[2] No prejudice to Plaintiff resulted.

It is clear that the refinancing of Abakan's debt was not a violation of the preliminary injunction in the Sonoro Litigation, as it did not constitute "new material debt." Nonetheless, Sonoro asserted in the Sonoro Litigation through a motion to hold Abakan in contempt that the proposed refinancing of this debt violated the injunction. Sonoro then spent months negotiating a settlement of the refinance issue. Each time settlement talks progressed, Sonoro would add other unreasonable conditions to delay the matter further. Its goal was to push this debt into default. Upon information and belief these were the instructions it received from both Plaintiff and Mr. Xinos. Defendants require discovery on this issue in order to "present facts essential to justify its opposition." Fed.R.Civ.P. 56(d); see also Exhibit "T" (identifying outstanding discovery needed) and the Declaration of Robert Miller submitted herewith.

Moreover, during negotiations between Abakan's Florida counsel and Plaintiff's counsel herein, Sonoro's counsel acted as a conduit for communication and expressly and purposefully concealed that Sonoro's counsel was, in fact, co-counsel representing Plaintiff. Sonoro's repeated delays at Plaintiff's and Mr. Xinos' instruction made Plaintiff's and Mr. Xinos' true

---

[2] In any event, a very brief delay in filing the 10Q could hardly be a material default permitting Plaintiff to come in ad take over Defendants' business.

goal abundantly clear – to take over Defendants' businesses. In this action Plaintiff's counsel made this clear when he stated, on the record, that Plaintiff is entitled to "walk in and take control." (See Exhibit "K"). (Emphasis supplied) Obviously exhibiting Mr. Xinos' control over this litigation, Plaintiff's counsel raises defenses on behalf Mr. Xinos as part of this motion. Further, Plaintiff seeks to utilize defenses herein which are only available to Sonoro.

Moreover, due to the positions taken by Sonoro in the Sonoro Litigation, Defendants' Lender, Hanwha decided not to go forward with the refinance. Defendants lost this opportunity due to Plaintiff's purposeful conduct. The damage inflicted by Plaintiff's tortious conduct is significant. Plaintiff now seeks to take advantage of its conduct and take over Defendants' businesses. Defendants implore the Court not to allow Plaintiff to perfect its scheme and permit full discovery to be had in this matter so Defendants could establish the validity of their claims.

Therefore, for these as well as the reasons more fully set forth at length herein, it is respectfully submitted that Plaintiff's motion to dismiss Defendants' counterclaim and for summary judgment on its claims should be denied in its entirety and Defendants' cross-motion to amend its answer with counterclaim should be granted.

# ARGUMENT

## POINT I

## PLAINTIFF'S MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY

### a. Motion to Dismiss Standard of Review.

In deciding a motion to dismiss, the Court must accept as true, all allegations contained in the pleading to be dismissed, and draws all reasonable inferences in the non-movant's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2d Cir. 2007). "To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013), citing, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-556 (2007). "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Igbal, 556 U.S. 662 (2009). Courts must "accept as true all material factual allegations in the complaint and draw all reasonable inferences in [non-movant's] favor." Johnson, 711 F.3d at 275. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Beiden, 754 F.2d 1059 (2d. Cir. 1985).

Plaintiff seeks to dismiss Defendants' counterclaim on the following bases, to wit: (1) Plaintiff alleges there is no underlying breach of contract claim, to support a breach of the implied covenant of good faith and fair dealing; (2) that any damages suffered by Abakan should be covered by a bond which should have been posted with respect to the preliminary injunction issued in the Sonoro litigation; (3) GTA did not act in bad faith; and (4) waiver and collateral

estoppel. Defendants respectfully submit that they have sufficiently stated a cause of action and Plaintiff's motion should be denied.

b. **Plaintiff's argument regarding the breach of an implied covenant of good faith and fair dealing is erroneous .**

In just one of its many contortions of the law, Plaintiff argues that there can be no independent claim for the breach of the implied covenant of good faith and fair dealing without an attendant breach of contract claim. Plaintiff misstates the law. "New York courts have repeatedly affirmed that a party may be in breach of an implied duty of good faith and fair dealing, even if it is not in breach of its express contractual obligations, when it exercises a contractual right as party of a scheme to realize gains that the contract implicitly denied or to deprive the other party of the fruit of its bargain." Duration Municipal Fund, LP v. JP Morgan Securities, Inc., 25 Misc.3d 1203(A), 899 N.Y.S.2d 59 (Sup. Ct. N.Y. Cnty. 2009), *citing* Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389, 663 N.E.2d 289, 639 N.Y.S.2d 977 (1995); Outback/Empire, Ltd. P'ship v. Kamitis, Inc., 35 A.D.3d 563, 825 N.Y.S.2d 747 (2d Dep't 2006); Richbell Info. Servs., Inc. v. Jupiter Partners, L.P., 309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003).

In support of its argument Plaintiff cites to Horowitz wherein the Southern District, held that "a good faith and fair dealing claim is not an insurance policy to cover instances where there is no breach of contract. Since there is no predicate liability for breach of contract, this claim is dismissed." Horowitz v. American Intern. Group, Inc., 2010 WL 3825737 (S.D.N.Y. 2010). In support of its decision the Court in Horowitz cited to the Second Circuit holding in Harris v. Provident Life and Acc. Ins. Harris v. Provident Life and Acc. Ins. Co., 310 F.3d 73 (2d Cir. 2002). An examination of the holding in Harris clarifies the rule. Id. There the Court held that

Under New York Law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract. The district court found that Harris' claim for breach of the implied covenant was therefore duplicative of her claim for breach of contract, and dismissed the implied covenant claim accordingly.

Id (quotations & citations omitted). (Emphasis supplied).

Thus, here, Defendants' counterclaim seeking redress for Plaintiff's breach of the implied warranty of good faith and fair dealing is a cause of action for breach of contract. Under Harris, it is unnecessary for Defendants to state a separate breach of contract claim, have stated a breach of contract claim, as they have stated a claim for breach of the implied covenant of good faith and fair dealing. Therefore, insofar as Plaintiff moves to dismiss Defendants' counterclaim on this basis, Plaintiffs' motion should be denied.

### c. Plaintiff's argument that Defendants damages herein are limited to any security which was posted with respect to the preliminary injunction in the Sonoro Litigation is incorrect, inasmuch as Plaintiff was not a party to the Sonoro Litigation.

Plaintiff argues that Defendants are barred from recovering damages inasmuch as there was no security posted with respect to the preliminary injunction issued in Sonoro such specious argument is untenable. This bond issue only applies if the claim of wrongful injunction is made against Sonoro. Plaintiff's argument results from a misapplication of the law regarding preliminary injunctions. The cases cited by Plaintiff involve situations where a movant obtains a preliminary injunction and the non-movant is damaged thereby. In such situations, the Courts have held that the non-movant's damages are limited to the security posted. Bedell Co. v. Harris, 240 N.Y.S.2d 550 (1st Dep't 1930); Salvage Process Corp. v. Acme Tank Cleaning Process Corp., 104 F.2d 105 (2d Cir. 1939); National Maritime Union v. Commerce Tankers Corp., 411 F.Supp. 1224 (S.D.N.Y. 1976).

These cases are wholly inapplicable here. Here, the preliminary injunction in question is the preliminary injunction obtained in the Sonoro Litigation. Neither Plaintiff, nor Mesocoat, were parties to that litigation. Inasmuch as Mesocoat was not a party to the Sonoro Litigation, the preliminary injunction undisputedly cannot preclude Mesocoat's claim here.

Moreover, with respect to Abakan, Plaintiff argues that the preliminary injunction issued in the Sonoro Litigation indemnifies its actions here. Taking Plaintiff's argument to its logical conclusion, the security posted pursuant to a preliminary injunction would not only cover all tortious actions committed by the movant, but all non-parties as well. Plaintiff's argument would have the movant for a preliminary injunction be liable for all tortious acts committed by any and all non-parties with respect to the preliminary injunction. Plaintiff would then have the Court bar the non-movant's ability to recover from any and all non-parties who commit tortious acts utilizing the preliminary injunction. Plaintiff's argument has no support in law and should be flatly rejected by the Court.

What the case law provides is that "any one who acts honestly and does not subject himself to malicious prosecution is free from liability in invoking the action of a court as the court itself, and what he does under its order is not wrong." In re Spencer Kellogg & Sons, 52 F.2d 129 (2d Cir. 1931). The point of the Court's ruling in Spencer is that if a party obtains a preliminary injunction in good faith, its only liability resultant to the other party from its obtaining the preliminary injunction is covered by the security. Id. Nothing in Spencer implies that all non-parties in the known universe are indemnified by preliminary injunction.

Here, as is more fully detailed, *infra*, the preliminary injunction at issue did not bar the refinance of the alleged debt. There was a preliminary order entered by the Florida Court immediately after Sonoro frivolously moved for contempt which ordered Abakan to "maintain

the status quo" until the hearing on the emergency motion. (See Exhibit "H"). This is not a preliminary injunction issued pursuant to Rule 65. Regardless, the Court was willing to allow the refinancing as long as all terms were disclosed, but Sonoro kept interfering, so that no final document could be entered into. Moreover, inasmuch as Plaintiff and Xinos were not parties to the Sonoro Litigation, the preliminary non-final injunction issued therein does not act to indemnify their tortious acts which, for the purposes of this motion to dismiss, have been committed as a matter of law[3].

Therefore, Plaintiff's claim that Defendants are barred from recovering damages due to Plaintiff's tortious acts is incorrect and Defendants' motion to dismiss on this basis, should be denied.

d. **Plaintiff's motion to dismiss Defendants' counterclaim on the basis that it has not acted in bad faith or dealt unfairly must be denied as this is an issue of fact which is not properly considered on a motion to dismiss.**

Plaintiff further argues that Defendants cannot recover damages here, as they entered into the preliminary injunction willingly and it would have suffered the harm regardless of Plaintiff's actions. This is untrue. The preliminary injunction did not prevent Abakan from refinancing the debt alleged herein. The preliminary injunction prevented Abakan from taking on "new material debt" without Sonoro's consent, which could not be unreasonably withheld. It is well settled that paying off a loan by agreeing to a new loan on substantially the same terms is not new debt, much less new "material" debt. This issue comes up in a variety of contexts. For instance, under the UCC, courts have dealt with the issue of whether a purchase money security interest changes

---

[3] We note that while Plaintiff claims that it has nothing to do with the Sonoro's Litigation and is a completely separate entity from Sonoro, Plaintiff here attempts to utilize a defense which is only available to Sonoro. This is just further evidence that Plaintiff, Xinos, and Sonoro are inextricably linked (which the Court must take as true for the purposes of this motion to dismiss).This is just one of several times where Plaintiff's argument evidences a relationship between Plaintiff, Sonoro, and Xinos.

into a non-purchase money security interest where the debt is refinanced by taking a new loan to pay off the prior loan. In this context, courts have noted:

> The fact that refinancing is carried out in the form of a new loan that pays the purchase money debt **does not mean there is a "new" debt** that is completely nonpurchase money.

*In re Fickey*, 23 B.R. 586, 590 (Bankr. E.D. Tenn. 1982) (emphasis added). Refinancing the same loan on nearly identical terms does not create any new debt. Courts look to the intent of the parties to determine whether any new debt is created. *See, e.g. In re Billings*, 838 F.2d 405, 408 (10th Cir. 1988) (argument that new note always constitutes payment of antecedent debt "ignores the possibility that the refinancing merely renewed the debt, rather than creating a new debt"). *See also, In re Woods Farmers Co-op. Elevator Co.*, No. 89-05299, 1991 WL 1301305, at *4 (Bankr. D.N.D. May 8, 1991). It was not Abakan's intent to create any new debt and, in fact, the terms of the refinancing had a Use of Proceeds provision that directed the funds to be used to simply refinance the George Town loan. *See In re Shurbier*, 134 B.R. 922, 927 (Bankr. W.D. Mo. 1991) ("Debtor did no more than substitute one creditor for another one.").

A refinance of existing debt is not the functional equivalent of taking on new debt and so the refinance would not have been covered under the terms of the preliminary injunction. Nonetheless, out of an abundance of caution, Abakan gave Sonoro notice of their intent to refinance the existing George Town debt. Sonoro's response, at Plaintiff's and Mr. Xinos' instruction, was to immediately move to hold Abakan in contempt of court. On April 24th, 2015, only three (3) days before the Note was due, the Court issued an Order and ordering the parties to "maintain the status quo until the hearing set for April 29th, 2015." (See Exhibit "H"). It was this temporary order that interfered with the refinancing, not the preliminary injunction.

Abakan then attempted to settle this motion, even speaking with Plaintiff's counsel herein, however, each time the parties got close to settling the matter, Sonoro continually

13

delayed their consent until such time as the alleged default occurred. Thus, it is manifest, that but for Plaintiff's interference with the refinance through their collusion in the Sonoro Litigation, the Defendants would not have been damaged in this action. Hence, Plaintiff's argument is erroneous in this respect and Plaintiff's motion to dismiss the counterclaim on this basis should be denied accordingly.

**e. Defendants' claims are not barred by waiver.**

With respect to waiver, Plaintiff claims that Defendants' counterclaim is barred, pursuant to two releases, to wit: (1) the release contained in the in the Waiver Agreement dated May 15th, 2015, which is part of the settlement documents in the Sonoro Litigation; and (2) the release contained in the Securities Exchange Agreement herein. Plaintiff is wrong.

First, with regard to the release contained in the Waiver Agreement, it is unclear whether Plaintiff now claims to be Sonoro's agent, a position it disputed during the Sonoro Litigation. Indeed, it would be impossible for it to raise this defense if Plaintiff were not Sonoro's agent, as the release does not name Plaintiff, but rather "[Sonoro] and [Sonoro's] employees, agents, representatives, consultations, successors, assigns, subsidiary corporations, parent corporation, and related corporate divisions...." However, Sonoro claimed in the Sonoro Litigation that it had no relationship with or connection to Plaintiff. The relationship between Plaintiff, Sonoro, and Mr. Xinos is further highlighted here, inasmuch as Plaintiff also argues that Defendants are precluded from bringing this claim against Mr. Xinos, given the releases. (See Plaintiff's Memo of Law page "16"). If Plaintiff and Mr. Xinos had no relationship, Plaintiff would never authorize its counsel to make this argument on his behalf. Indeed, having Mr. Xinos partially liable for these actions can limit Plaintiff's liability. Plaintiff's is, therefore, contrary to its own

self interest. Nonetheless, Plaintiff makes this argument, as Mr. Xinos is its control person and he seeks to avoid liability for his tortious acts.

In addition, the Sonoro Release is a limited release and only releases Sonoro, its agents, employees, etc, from those claims which "in any way directly or indirectly arising out of or in anyway connected to this Agreement, the Purchase Agreements, the Initial Promissory Notes, the Waiver and Exchange Agreement, Replacement Note, Promissory Notes, and the Amended Note, including, but not limited to, any and all claims, defenses, and affirmative defenses [Abakan] asserted in the [Sonoro] Litigation...." The various agreements referred to in this section of the Waiver Agreement were between Sonoro and Abakan. (See Exhibit "W"). The counterclaim here involves the alleged breach of the agreements involved herein which are completely different from the agreements entered into by Sonoro and Abakan. Thus, the Sonoro Release does not release the claims herein.

Further, the release executed by the parties in the Underlying Agreements at issue here likewise does not release these claims. The release language, as cited by Plaintiff in pages "15" through "16" of its memorandum of law, releases Plaintiff

> from any and all action and causes of action of action, judgments, executions, suits, debts, claims, demands, liabilities, obligations, damages and expenses of any and every character, known or unknown, direct and/or indirect, at law or in equity, of whatsoever kind or nature, whether heretofore or hereafter arising, <u>for or because of any matter of things done, omitted or suffered to be done by any of the Released Parties prior to and included the Closing Date</u>...(emphasis supplied).

Thus, the release as quoted above only released those acts committed by Abakan[4] as of or prior to the Closing Date (April 28th, 2014). (See Exhibit "W"). The acts complained of here all took place well after the Closing Date. Therefore, the release does not act to bar Defendants' counterclaim here and Plaintiff's motion to dismiss should be denied accordingly.

---

[4] Pointedly, none of the language cited by Plaintiff herein even mentions MesoCoat.

### f. Defendants' counterclaim is not barred by the doctrine of collateral estoppel.

"Collateral estoppel, or issue preclusion, is the branch of *res judicata* doctrine that prevents a party from relitigating an issue of fact or law that has been decided in an earlier suit." Murphy v. Gallagher, 761 F.2d 878 (2d Cir. 1984). It is beyond cavil that in order to prove collateral estoppel to apply the following elements must be met: (1) the parties to the two proceedings must be the same or in privity; (2) the prior proceeding must have resulted in a valid and final judgment against the party whom preclusion is sought or his privy; (3) the factual issue to be precluded must have been actually litigated in the prior proceeding; (4) the factual issue to be precluded must have been essential to the judgment in the prior proceeding; and (5) there must be mutuality, that is, a party generally prevented from invoking the preclusive force of a judgment unless that party would hae been bound had the prior litigation of the issue reached the opposite result. Cimerring v. Merrill Lynch Mtge. Invs., Inc., 35 Misc.3d 1242(A), 953 N.Y.S.2d 549 (Sup. Ct. Queens Cnty. 2012). Further, it is well established that considerations of due process prohibit personally binding a party by the results of an action in which the party has never been afforded an opportunity to be heard. Postal Tel. Cable Co. v. Newport, 245 U.S. 464 (1918).

Plaintiff's claims that somehow collateral estoppel bars Defendants' counterclaim are without merit. Here, neither Plaintiff, nor Mesocoat were parties to the Sonoro Litigation. Thus, on that basis alone, it is manifest that collateral estoppel does not apply since Mesocoat had no opportunity to be heard. In addition, contrary to Plaintiff's arguments, these issues were never litigated within the Sonoro Litigation nor could they have been. Plaintiff admits that Defendants' claims sound in breach of the implied covenant of good faith and fair dealing (which, it has been established, is a cause of action of breach of contract) under the terms of the

Underlying Agreements. Pursuant to the terms of the Underlying Agreements, specifically

section 4.6 of the Note, the parties specifically agreed that "any and all claims regarding the

Underlying Agreements would be "brought only in the State Courts of New York or in the

Federal Courts located in New York County, New York." (See Exhibit "B").[5] It is well

established that choice of law clauses are valid. Hartford Fire Ins. Co. v. Orient Overseas

Containers Lines (UK), Ltd., 230 F.3d 549, 556 (2d Cir. 2000); T.M. Real Estate Holding, LLC

v. Stop & Shop Supermarket Co., LLC, 2013 U.S.Dist. LEXIS 22448 (S.D.N.Y. 2013). Hence,

this clause would have barred Defendants from raising these claims as part of the Sonoro

Litigation in Florida. Thus, collateral estoppel does not bar the claims here. Further, there was

no final judgment issued in the Sonoro Litigation and there was certainly no final judgment with

respect to the issues in this litigation. Defendants' claims against Plaintiff and Xinos, non-parties

to the Sonoro Litigation, were not litigated therein and, thus, there was no final adjudication

thereof. Thus, one of the necessary elements of collateral estoppel, the issuance of a valid final

judgment, is absent here and, thus, collateral estoppel does not apply to bar.

Therefore, inasmuch as these claims were not brought and could not have been brought

within the Sonoro Litigation and since the Court in Sonoro never made an adjudication regarding

Defendants' counterclaim within the Sonoro Litigation, it is manifest beyond cavil that collateral

estoppel does not act to bar Defendants' counterclaim herein.

Given the foregoing, it is manifest that Plaintiff's motion to dismiss Defendants'

counterclaim should be denied in its entirety.

---

[5] Indeed, Plaintiff uses this section as the basis for jurisdiction in this matter. (See paragraph "__" of the complaint).

## POINT II

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED IN ITS ENTIRETY

It is beyond cavil that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Ford v. Reynolds</u>, 316 F. 3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. *See* <u>Anderson</u>, 477 U.S. at 248. When considering a motion for summary judgment, the Court must view the evidence and any inferences that may be drawn in the light most favorable to the non-moving party. *See* <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denial of his pleading." <u>Anderson</u>, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. <u>Id.</u> at 247-48 (emphasis in original). Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. <u>Id.</u> at 248.

In considering a summary judgment motion, "the Court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986) (Citing <u>Anderson</u>, 477 U.S. at 248). If the Court

recognizes any material issues of fact, summary judgment is improper, and the motion must be

denied. *See* Eastwav Const. Corp. v. City of N.Y., 762 F.2d 243, 249 (2d Cir. 1985).

Rule 56(d) provides, in pertinent part:

> (d) When Facts Are Unavailable to the Nonmovant.  If a
> nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition,
> the court may:
>> (1) defer considering the motion or deny it;
>> (2) allow time to obtain affidavits or declarations or to
>> take discovery; or
>> (3) issue any other appropriate order.

F.R.C.P.  56(d).

The Second Circuit has consistently held that summary judgment motions should "only

be granted after discovery, the nonmoving party has failed to make a sufficient showing on an

essential element of its own case...." Miller v. Wolpoff & Abramson, L.L.P. 321 F.3d 292, 303

(2d Cir 2003), *quoting*, Hellstrom v. U.S. Dep't of Veteran Affiars, 201 F.3d 94, 97(2d Cir

2000)(emphasis supplied);  George C Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete

Mix Corp., 554 F.2d 551 (2d Cir. 1977).   Moreover, the Second Circuit has gone so far as to

hold a motion for summary judgment should not even be "entertained" prior to discovery being

completed.  George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554

F.2d 551 (2d Cir 1977).   Further, the Courts have consistently held that it is only in the "rarest of

cases" may summary judgment be granted against a party who has not been afforded an

opportunity to conduct discovery.  Walden v. Sanitation Salvage Corp., 2015 U.S. Dist. Lexis

40280 (S.D.N.Y. 2015), *quoting*, Hellstrom, 201 F.3d 94.

Indeed, even in considering Rule 56(d), the Court has held that

> There is a critical distinction...between cases where a litigation opposing a
> motion for summary judgment requests a stay of that motion to conduct
> *additional* discovery and cases where the same litigation opposes a motion for
> summary judgment on the ground that it is entitled to an opportunity to *commence*

discovery with respect to Plaintiff's claims and its counterclaims....This distinction was noted by the Supreme Court in its often-cited decision in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986):

> The requirement [that an adverse party must set forth specific facts showing that there is a genuine material issue for trial]...is qualified by Rule 56(f)'s provisions that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.

Crystalline H[2]O, Inc. v. Orminski, 105 F.Supp.2d 3 (N.D.N.Y.)(emphasis in decision),

quoting, Anderson v. Liberty Lobby, Inc., 477 U.S. 242. This case is not the rarest of cases

where a Plaintiff should be granted summary judgment without Defendants being able to conduct

discovery, despite Plaintiff's protestations to the contrary. This is an action where Plaintiff

colluded with a third party in a separate action to create an alleged default on debt it is owed, so

that it could wrongfully attempt to foreclose on the security Plaintiff's actions are violative of

the implied covenant of good faith and fair dealing and Defendant is entitled to discovery in this

respect.

Plaintiff brings this motion for summary judgment prior to the Court so much as holding

a conference scheduling disclosure. The parties have not yet even exchange the required initial

disclosure pursuant to Rule 26 (f). Defendants respectfully submit that it is necessary for them to

engage in discovery here regarding both Plaintiff's claims and Defendants' counterclaims.

Defendants' first three affirmative defenses result from the fact that Plaintiff herein has

colluded with Sonoro Investments, S.A. and Mr. Xinos to cause the alleged default here in

having Sonoro object to Defendants' refinancing of the debt involved herein. Defendants further

allege that Plaintiff took this action in an unjust attempt to take over Defendants' businesses,

which are worth far more than any alleged debt due Plaintiff. These defenses act to bat

Plaintiff's claims. Specifically, Plaintiff's motion includes a request for default rates of interests

and equitable relief (the taking over Defendants' businesses), which the Court will likely not grant when Defendants have established their defenses. However, in order to prove their claims, Defendants require both documentary disclosure and deposition from Plaintiff regarding all documents and correspondence exchanged between Plaintiff and Sonoro. It will also become necessary for Defendants to take the deposition of not only Plaintiff's principals, but also of at least one third party, John Xinos.

As discovery has not yet commenced, Defendants do not have the extensive documentary evidence currently in Plaintiff's possession which would prove its affirmative defenses. Hence, Plaintiff's bringing of their motion for summary judgment at this early juncture is both premature and highly prejudicial to Defendants' ability to properly defend themselves in this action. However, the documentary evidence Defendants are in possession of does evidence Plaintiff's collusion with Sonoro and Xinos. Plaintiff's counsel has admitted that Plaintiff and Sonoro are both represented by Robins Kaplan, LLC, who was Sonoro's counsel in the Sonoro Litigation (See Exhibit "N"). In fact, Plaintiff has objected to disclosing correspondence exchanged between its counsel and Robins Kaplan, LLC on the basis of privilege.

In the Sonoro Litigation, Robins Kaplan took great pain to make it appear as if it had no relationship with Plaintiff. In fact, in several pieces of correspondence, Robins Kaplan, LLC represented that it had consulted with Plaintiff's counsel regarding the terms of the settlement of the Sonoro Litigation, giving the false impression that they had no relationship with Plaintiff when they, in fact, represented Plaintiff. (See Exhibit "S").

That Plaintiff and Sonoro are represented by the same counsel is *prima facie* evidence that they are related entities. Further disclosure would reveal that Plaintiff and Sonoro colluded to manufacture the alleged default here in order to receive the windfall of taking over

Defendants' businesses. Defendants have filed discovery demands requesting the documentation necessary to defend itself in this action. (See Exhibit "T"). These documents are necessary for Defendants to mount a proper defense in this action and prosecute their counterclaims. These demands are incorporated by reference herein. Defendants should not be deprived of their right to obtain the discovery necessary to defend itself in this action.

Additionally, inasmuch as no discovery has commenced and a motion to dismiss is pending, there can be no question as to whether Defendants have raised an issue of fact their defenses. They are established as a matter of law. The Court must take as true that Plaintiff, Sonoro and Xinos colluded to contrive this alleged default in a tortious scheme to take over Defendants' businesses. Therefore, inasmuch as Plaintiff's defenses are established as a matter of law, Plaintiff's motion for summary judgment must be denied.

Defendants respectfully submit that Plaintiff's motion for summary judgment should be denied. In the alternative, Defendants respectfully submit that the Court should defer its consideration on Plaintiff's motion for summary judgment until discovery is completed.

## POINT III
## DEFENDANTS' CROSS-MOTION TO ADD XINOS AS A PARTY SHOULD BE GRANTED

Rule 19(a) provides that a "person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if in that person's absence the court cannot according complete relief among existing parties. F.R.C.P. 19(a). "If the court determines that any of the criteria set forth in Rule 19(a) is met, then it must order that the absent person be joined as a party." Johnson v. Smithsonian Inst., 189 F.3d 180 (2d Cir. 1999). Alternatively, with respective to permissive joinder, Rule 20(a)(2) provides:

> [p]ersons…may be joined in one action as defendants if: (a) any right to relief is asserted against them jointly, severally, or in the alternative, with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (b) any question of law or fact common to all defendants will arise in this action.

F.R.C.P. 20(a)(2).

Here, it is clear that Rule 19(a) acts to require Xinos to be added as a party herein. Inasmuch as Defendants claim that Xinos acted in collusion with Plaintiff to contrive an alleged default of the debt involved herein, without joining Xinos as a party, the court will not be able to accord Defendants the complete relief they are entitled to.

Alternatively, Rule 20(a)(2) acts to allow joinder here, since the proposed claims against Xinos arise from the same series of transactions which constitute their claims against Plaintiff. (See Exhibit "U"). Thus, the Court should add him as a party.

Therefore, Defendants' respectfully submit that their cross-motion seeking to join Xinos as a party be granted in its entirety.

23

**POINT IV**

**PLAINTIFF'S MOTION SEEKING A STAY OF DISCOVERY SHOULD BE DENIED IN ITS ENTIRETY**

There is no basis to stay discovery here. Plaintiff's real goal is to prevent discovery altogether so that the Court will not discover its tortious conduct. Indeed, even with the most preliminary limited demands that the Court permitted Defendants to issue as part of this motion, it has now been revealed that Sonoro and Plaintiff are represented by the same counsel. In the event that discovery is allowed to proceed, Defendants submit that there will be substantial evidence which supports its assertion that not only are Plaintiff and Sonoro related and controlled by John Xinos, but they colluded to contrive the alleged default herein.

Upon such a showing, Defendants are confident the Court will find Plaintiff liable to Defendants for the breach of the implied warranty of good faith and fair dealing and award Defendants damages in this regard. Therefore, it is respectfully submitted that Plaintiff's motion for a stay of discovery should be denied in its entirety.

**CONCLUSION**

Therefore, Plaintiff's motions to dismiss and for summary judgment should be denied in their entirety and Defendants' cross-motion to amend its counterclaim should be granted in its entirety.

Dated: New York, New York
July 17, 2015

LAW OFFICES OF STEVEN E. ROSENFELD, P.C.

By: _____
Steven E. Rosenfeld (SER-5961)
Attorneys for Plaintiff
767 Third Avenue, 30th Floor
New York, New York 10017
Tel. No.: (212) 953-1600