UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GEORGE TOWN ASSOCIATES S.A.,

        Plaintiff,

v.

ABAKAN, INC. and MESOCOAT, INC.,

        Defendants.

Case No. 15-CV-3435 (DLC) (JLC)

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT AND APPOINTMENT OF RECEIVER

GOETZ FITZPATRICK LLP
One Penn Plaza – Suite 3100
New York, NY 10119
(212) 695-8100

Douglas Gross (DG-5984)

*Attorneys for Plaintiff, George Town Associates S.A.*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| PRELIMINARY STATEMENT | | 1 |
| STATEMENT OF FACTS | | 2 |
| ARGUMENT | | 3 |
| I. | THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR CONTEMPT AND APPOINTMENT OF RECEIVER | 4 |
| A. | Defendants are in Contempt of the Court's Preliminary Injunction | 4 |
| | 1) The Preliminary Injunction is Clear and Unambiguous | 5 |
| | 2) Proof of Defendants' Noncompliance is Clear and Convincing | 6 |
| | 3) Defendants Made No Attempt to Comply with the Preliminary Injunction | 9 |
| B. | Given Defendants' Violations of the Preliminary Injunction, Plaintiff's Requested Relief is Reasonable | 10 |
| | 1) The Court Should Appoint a Receiver Over MesoCoat in Accordance with the Security Agreement between the Parties | 10 |
| | 2) George Town Should Be Awarded Its Attorneys' Fees and Costs | 14 |
| CONCLUSION | | 14 |

# TABLE OF AUTHORITIES

Page

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
96-cv-9721, 2002 U.S. Dist. LEXIS 16323 (S.D.N.Y. Sept. 3, 2002) ........................................8

*Armstrong v. Guccione*,
470 F.3d 89 (2d Cir. 2006) ..........................................................................................................4

*CBS Broad., Inc. v. FilmOn.com, Inc.*,
10-cv-7532, 2013 U.S. Dist. LEXIS 130612 (S.D.N.Y. Sept. 10, 2013) ..................................11

*Drywall Tapers & Pointers, Local 1974 v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*,
889 F.2d 389 (2d Cir. 1989) ........................................................................................................5

*EEOC v. Local 28 of the Sheet Metal Workers Int'l Ass'n*,
247 F.3d 333 (2d Cir. 2001) ......................................................................................................11

*Latino Officers Ass'n v. City of New York*,
519 F.Supp.2d 438 (S.D.N.Y. 2007) ...........................................................................................9

*Levin v. Tiber Holding Corp.*,
277 F.3d 243 (2d Cir. 2002) ........................................................................................................6

*New York State Nat'l Org. for Women v. Terry*,
952 F.Supp.1033 (S.D.N.Y. 1997) ............................................................................................14

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs.*,
369 F.3d 645 (2d Cir. 2004) ......................................................................................................10

*Republic of Philippines v. Marcos*,
806 F.2d 344 (2d Cir. 1986),
*cert. dismissed*, 480 U.S. 942 (1987),
*cert. denied*, 481 U.S. 1048 (1987) ...........................................................................................13

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980) .....................................................................................................................4

*Rosenstiel v. Rosenstiel*,
278 F.Supp. 794 (S.D.N.Y. 1967) ...............................................................................................8

*Shillitani v. United States*,
384 U.S. 364 (1966) .....................................................................................................................4

*Skaff v. Progress Int'l, LLC*,
   12-cv-9045, 2014 U.S. Dist. LEXIS 152550 (S.D.N.Y. Oct. 28, 2014) ...................................12

*United States SEC v. Amerindo Inv. Advisors, Inc.*,
   05-cv-5231, 2013 U.S. Dist. LEXIS 49805 (S.D.N.Y. March 11, 2013)................................12

*Utica College v. Gordon*,
   389 Fed.Appx. 71 (2d Cir. 2010)...............................................................................................5

*Varsames v. Palazzolo*,
   96 F.Supp.2d 361 (S.D.N.Y. 2000) .........................................................................................12

*Vuitton et Fils S.A. v. Carousel Handbags*,
   592 F.2d 126 (2d Cir. 1979) .....................................................................................................9

*Yurman Studio, Inc. v. Castaneda*,
   07-cv-1241, 2009 U.S. Dist. LEXIS 13870 (S.D.N.Y. Feb. 23, 2009) ................................5, 14

## Rules

Fed. R. Civ. P. 66..........................................................................................................................12

## Other Authorities

23 C. Wright, A. Miller, & R. Marcus, *Federal Practice and Procedure* § 2983 (2014).............12

## PRELIMINARY STATEMENT

Plaintiff George Town Associates S.A. ("Plaintiff" or "George Town") respectfully submits this Memorandum of Law in Support of its Motion for Contempt and Appointment of Receiver against Defendants Abakan, Inc. ("Abakan") and MesoCoat, Inc. ("MesoCoat") (collectively, "Defendants").

As George Town has demonstrated throughout this litigation, this is an exceedingly straightforward action that primarily arises due to Defendants' breach of a promissory note and certain other attendant agreements. The undisputed facts establish that Abakan issued a secured promissory note to George Town ("Secured Note"), which MesoCoat guaranteed. In pertinent part, the Secured Note requires compliance with the reporting requirements of the U.S. Securities and Exchange Commission ("SEC"), as well as payment of the principal upon maturity. Defendants breached both obligations. George Town initiated this action, and the Court preliminarily enjoined Defendants from violating the covenants of the Secured Note.

In blatant disregard for the Court's directives, Defendants have now gone so far as to similarly violate the Court's Preliminary Injunction – which was entered on consent – by repurchasing stock and dissipating material assets. In doing so, Defendants obtained $1 million in cash as a result of the transaction violative of the Preliminary Injunction. If left unchecked, Defendants' purposeful evasion of the protections in the Preliminary Injunction will otherwise render George Town unprotected in pursuing its litigation. But guarding George Town's interests is the very reason the Court entered the Preliminary Injunction (and Temporary Restraining Order) in the first place. For this reason, and as set forth below, the Court should find Defendant in contempt of the Preliminary Injunction and grant the relief requested herein.

## STATEMENT OF FACTS

On May 4, 2015, George Town commenced this action seeking, *inter alia*, damages as a result of Defendants' defaults of the Secured Note and other attendant agreements. (Dkt. 1). Shortly thereafter, and in order to protect its interests under the Secured Note, George Town filed a Motion for a Temporary Restraining Order, Preliminary Injunction, and Appointment of Receiver ("Motion for Preliminary Injunction"). (Dkt. 7, Dkt. 13). Among other things, George Town sought such relief to prevent Defendants from frustrating any beneficial judgment George Town may recover in this action. Identifying the strength of George Town's claims, the Court found there was "good cause to believe that Abakan defaulted the secured promissory note at issue in this action, and that George Town is therefore likely to prevail on the merits of this action." (Dkt. 5). Following a hearing, the Court entered a Temporary Restraining Order requiring Defendants to adhere to the express provisions of the Secured Note. (*Id.*).[1]

Thereafter, the Court set an evidentiary hearing on George Town's Motion for Preliminary Injunction. (Dkt. 14). Rather than defend on the merits, Defendants agreed to entry of a preliminary injunction, and George Town withdrew its request for appointment of a receiver over MesoCoat. (Dkt. 26). Accordingly, the Court converted the Temporary Restraining Order to a Preliminary Injunction that same day. (Dkt. 27).

The Court's Preliminary Injunction mirrors the covenants of the Secured Note that Defendants agreed upon when issuing and guaranteeing the Secured Note to George Town. Pertinent here, the Preliminary Injunction specifically enjoins Defendants from (i) repurchasing

---

[1] Though the Court initially denied George Town's request for a receiver given the restrictions imposed on Defendants, the Court only did so without prejudice to George Town's right to renew its request. *See* Transcript of Hearing, at *15, *21 (Dkt. 23). George Town later agreed to withdraw its request, but did so only in favor of entry of the Preliminary Injunction. (Dkt. 26). Only now, however, have Defendants shown their propensity for violating Court orders and disposing of significant assets. Given this change in circumstances, George Town's interests in this litigation must be protected. As a result, George Town now respectfully renews its request for appointment of a receiver over MesoCoat, in accordance with the Court's order.

2

or otherwise acquiring any shares of Defendants' capital stock, and (ii) selling, leasing or otherwise disposing of any significant portion of assets outside the ordinary course of business. (Dkt. 5, Dkt. 27).

Notwithstanding such prohibitions, Defendants issued a press release just yesterday touting that Abakan had purchased 400,000 of its outstanding common shares, acquired shares representing an 11.9% ownership interest in MesoCoat, and sold 20.5% ownership in a subsidiary, Powdermet Inc. ("Powdermet"), thereby reducing its ownership in Powdermet to a mere 3.6%. *See* Gross Decl. at Ex. A (filed herewith). Accordingly, and as set forth below, Defendants should be found in contempt, a receiver should be appointed over MesoCoat, and George Town should be awarded its attorneys' fees and costs in pursuing this motion.

## ARGUMENT

In accordance with the relief sought in its Motion for Preliminary Injunction, George Town now seeks Court intervention to protect its ongoing interest in this litigation. Due to Defendants' consummation of a transaction in which they repurchased stock and dissipated significant assets, the Court should order Defendants in contempt of its Preliminary Injunction and (1) appoint a receiver over MesoCoat, or in the alternative, order Defendants to deposit the principal amount of the Secured Note into the Court's registry or with a Court-appointed receiver pending the outcome of this litigation; and (2) order Defendants to reimburse George Town's reasonable attorneys' fees and costs in bringing this motion.

Such relief is necessary because Defendants defaulted on the Secured Note not by a mere technicality, but rather, by simply refusing to pay the principal upon maturity and failing to comply with SEC regulations. Defendants have even admitted to the underlying facts that

caused their breaches. (Dkt. 56 at *6; Dkt. 59 ¶¶ 50, 56).[2] In accordance with George Town's arguments in support of its Motion for Preliminary Injunction, such relief will ensure this litigation remains meaningful and that George Town's efforts are not rewarded with what would otherwise be a "hollow judgment" against Defendants. In particular, the $1 million in cash proceeds Defendants obtained as a result of their transaction is the easiest source of dissipation by which Defendants can hinder George Town's recovery. As articulated below, Plaintiff's Motion for Contempt and Appointment of Receiver should be granted.

## I. THE COURT SHOULD GRANT PLAINTIFF'S MOTION FOR CONTEMPT AND APPOINTMENT OF RECEIVER

"There can be no question that courts have inherent power to enforce compliance with their lawful order through civil contempt." *Armstrong v. Guccione*, 470 F.3d 89, 101-02 (2d Cir. 2006) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). Guided by longstanding Supreme Court precedent, the Second Circuit reasons that the contempt sanction is the "most prominent" of a court's implied powers, "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court." *Id.* at 101 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 754 (1980)). "The chief characteristic of civil contempt is that its purpose is to compel obedience to an order of the court to enforce the rights of the other party to the action." *Id.*

### A. Defendants are in Contempt of the Court's Preliminary Injunction

"A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to

---

[2] As articulated in George Town's pending Motion to Dismiss and Motion for Summary Judgment, Defendants only defense amounts to a concocted "conspiracy" theory, which fails as a matter of law and was clearly invented as a dilatory tactic.

4

comply in a reasonable manner." *Utica College v. Gordon*, 389 Fed.Appx. 71, 72 (2d Cir. 2010). As demonstrated below, each of these prerequisites is satisfied as a result of Defendants' violation of the Court's Preliminary Injunction through consummation of a transaction in which stock was reacquired and significant assets were dissipated.

### 1) The Preliminary Injunction is Clear and Unambiguous

"A federal court must frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *Yurman Studio, Inc. v. Castaneda*, 07-cv-1241, 2009 U.S. Dist. LEXIS 13870, at *7 (S.D.N.Y. Feb. 23, 2009) (quoting *Drywall Tapers & Pointers, Local 1974 v. Local 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 889 F.2d 389, 400 (2d Cir. 1989)). Accordingly, the requirement that an order be "clear and unambiguous" requires that it be "specific in its terms" and "describe in reasonable detail ... the act or acts sought to be restrained." *Id.* Here, there is no question that the terms of the Preliminary Injunction are clear and unambiguous.

The parties submitted their proposed terms for the Preliminary Injunction to the Court after tracking – almost verbatim – the covenants of the Secured Note that they agreed to be bound by. Indeed, the Preliminary Injunction follows Article II of the Secured Note with near precision by enjoining Defendants from only such limited actions as explicitly prohibited by this singular section of the Secured Note. *Compare* Secured Note §§ 2.1-2.6 (Compl. at Ex. B, Dkt. 1), *with* Preliminary Injunction ¶ 5 (Dkt. 5, Dkt. 27). Indeed, the Court's Preliminary Injunction nearly mirrors this express provision in the Secured Note by enjoining:

> Defendants from performing any of the following actions outside its ordinary course of business without George Town's consent, which will not be unreasonably withheld, delayed or conditional, as set forth in the secured promissory note between George Town and Abakan, which MesoCoat guaranteed ...

5

> b) Repurchasing or otherwise acquiring (whether for cash or in exchange for property or other securities or otherwise) in any one transaction or series of related transactions any shares of Defendants' capital stock or any warrants, rights or options to purchase or acquire any such shares; ... [and]
>
> e) Selling, leasing or otherwise disposing of any significant portion of assets outside the ordinary course of business.

Preliminary Injunction ¶ 5 (Dkt. 5, Dkt. 27) (emphasis supplied).

Defendants cannot espouse confusion or ambiguity with the terms of the Preliminary Injunction, since its very language was negotiated and agreed-upon prior to the Court's order. Indeed, the Court discussed proposed language for the Preliminary Injunction on the record at the hearing, and even afforded the parties a break in the proceedings in order to reach an agreement on its terms. *See* Transcript of Hearing, at *14-18. Accordingly, the four corners of the Court's order are clear and unambiguous.

### 2) Proof of Defendants' Noncompliance is Clear and Convincing

"In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002). Here, the Court need look no further than Defendants' own press releases to determine that violations of the Preliminary Injunction have occurred. There, Defendants boast that Abakan acquired 400,000 of its outstanding common shares, shares representing an 11.9% ownership interest in MesoCoat, and sold or otherwise disposed of 20.5% of ownership in a subsidiary, Powdermet. *See* Gross Decl. at Ex. A. Neither the Court nor George Town was afforded any notice of this transaction. Indeed, George Town only became aware of it when Defendants issued their press releases. Accordingly, Defendants' noncompliance is clear.

*First*, the Court ordered that Defendants are expressly enjoined from "[r]epurchasing or otherwise acquiring (<u>whether for cash or in exchange for property or other securities or otherwise</u>) in any one transaction or series of related transactions any shares of Defendants' capital stock..." Preliminary Injunction ¶ 5(b) (emphasis supplied). Defendants, however, did just that by unapologetically acquiring 400,000 of Abakan's shares and all of the outstanding shares in MesoCoat, in exchange for other securities, property, and $1 million in cash. *See* Gross Decl. at Ex. A.

*Second*, the Preliminary Injunction prohibits Defendants from "[s]elling, leasing or otherwise disposing of any significant portion of assets outside the ordinary course of business." Preliminary Injunction ¶ 5(e). Selling over 20% ownership in a subsidiary easily qualifies as the disposal of a "significant" asset, and Defendants even admit as much in their own press release. *See* Gross Decl. at Ex. A ("The decision to divest a <u>significant</u> portion of Abakan's ownership of Powdermet...") (emphasis supplied). Such assets are also deemed significant when compared to Abakan's own abysmal financial status.[3]

In light of such clear and convincing proof of their violations of this Court's order, Defendants cannot claim to be shielded by any technical qualifications in the language of the Preliminary Injunction so as to avoid the consequences of their actions. *See, e.g.* Preliminary Injunction ¶ 5 ("the Court hereby restrains Defendants from performing any of the following actions <u>outside its ordinary course of business</u> without George Town's consent...") (emphasis supplied). Though Defendants may claim their transaction was supposedly in the ordinary

---

[3] Part I, Item 1 of Abakan's Quarterly Report to the SEC ("Form 10-Q") identifies current assets totaling only $1.8 million, while current liabilities total $8.3 million. (Dkt. 16-1, 16-2, 16-3). Further, Abakan states: "Abakan had net losses for the period of June 27, 2006 (inception) to the period ended November 30, 2014, of $22,399,312 and a working capital deficit of $6,553,056. These conditions raise substantial doubt about Abakan's ability to continue as a going concern." *Id.* Abakan's outlook on its future is equally dim: "We do not expect to realize net income in the near term ... we expect to continue to operate at a loss through fiscal 2015." *Id.*

7

course of business, any such assertion would be unavailing. First, Defendants' ordinary business is designing and manufacturing specialized products – not engaging in complex securities exchanges between subsidiaries. Further still, the very "decision to divest a significant portion of Abakan's ownership of Powdermet, was mutually agreed upon by the respective Boards of Abakan and Powdermet." Gross Decl. at Ex. A. The fact that approval by Abakan's Board of Directors was required in order to consummate this transaction (as well as likely disclosure to the SEC of such transaction) supports the reality that such activity is outside Defendants' ordinary business.

Additionally, the very fact that prohibitions against acquiring capital stock and dissipating significant assets were included as restrictive covenants in the Secured Note is proof that the parties themselves deemed such actions "extraordinary." Indeed, this Court immediately recognized this reality at the hearing on George Town's Motion for Preliminary Injunction. *See* Transcript at *14 ("The introductory language in paragraph 5 [of the Temporary Restraining Order] talks about actions in the ordinary course of business; so this is addressed to performing any of the following actions outside its ordinary business without consent. So it's talking about extraordinary actions, not the normal actions taken in the course of doing business, and so I want to know whether any of these extraordinary actions you object to in a TRO.").

Even if Defendants attempt to claim their actions were innocent, or lacked an improper motive, "the absence of willfulness will not be a defense to a civil contempt motion." *Rosenstiel v. Rosenstiel*, 278 F.Supp. 794, 803 (S.D.N.Y. 1967). Indeed, the "fact that the prohibited act was done inadvertently or in good faith ... does not preclude a citation for civil contempt, for the sanction is remedial in nature." *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 96-cv-9721, 2002 U.S. Dist. LEXIS 16323, at *24 (S.D.N.Y. Sept. 3, 2002) (citing *Vuitton et Fils S.A. v.*

*Carousel Handbags*, 592 F.2d 126, 128 n.2 (2d Cir. 1979)). Despite any claims Defendants may assert after-the-fact, the Court's Preliminary Injunction expressly and strictly prohibits Defendants from undertaking such actions. They did so anyway, and therefore, should be found in noncompliance.

### 3) Defendants Made No Attempt to Comply with the Preliminary Injunction

"[S]ubstantial compliance" is the appropriate standard in evaluating noncompliance in a contempt case. *See Latino Officers Ass'n v. City of New York*, 519 F.Supp.2d 438, 446 n.43 (S.D.N.Y. 2007) (noting the Second Circuit adopted such standard in *dicta*). Here, there is a lack of any evidence that Defendants were prevented from substantially complying with the terms of the Court's Preliminary Injunction. On the contrary, their violative transaction was long-planned, and affirmatively excluded from the attention of the Court and George Town.

In their press releases, Defendants admit that their consummated transaction was long in the works. *See* Gross Decl. at Ex. A (noting such transaction "follow[ed] its long term strategy" and that the "decision to divest a significant portion of Abakan's ownership of Powdermet ... is the culmination of the staged acquisition of MesoCoat planned as part of Abakan's initial investment in 2009."). Notwithstanding their longstanding plans, Defendants made no mention of such intentions to the Court at the hearing on George Town's Motion for Preliminary Injunction, so as to request a carve-out in the restrictions the Court imposed. Though the negotiations for such a significant transaction were obviously ongoing for some time, Defendants similarly refused to even seek Court approval prior to consummating their deal. Nor did Defendants give George Town the opportunity to provide its informed consent to the transaction, as explicitly required by the Preliminary Injunction. *See* Preliminary Injunction ¶ 5 (enjoining "Defendants from performing any of the following actions outside its ordinary course of business without George Town's consent...").

9

Finally, Defendants were fully capable of completing its proposed transaction, and then using the $1 million in cash proceeds to repay George Town on its Secured Note. *See* Transcript at *13-14 (noting no prohibition in the Preliminary Injunction from repaying the Secured Note). Though such sum would have been insufficient to satisfy George Town's loan in full, Defendants chose not to earmark any of the $1 million in proceeds for the satisfaction of George Town's Secured Note, which is apparently intended for hasty dissipation. *See* Gross Decl. at Ex. A. For all of these reasons, it is clear that Defendants had the ability to comply with the Court's Preliminary Injunction, or to at least request lenience from its restrictions, but chose not to.

## B. Given Defendants' Violations of the Preliminary Injunction, Plaintiff's Requested Relief is Reasonable

"The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs.*, 369 F.3d 645, 657 (2d Cir. 2004). Though "[a] party who violates an injunction entered by the district court faces the threat of both civil and criminal contempt" George Town requests only reasonable relief to ensure future compliance with the Court's Preliminary Injunction and to protect its interests in this litigation. *Id.* Specifically, George Town requests that the Court appoint a receiver over MesoCoat in accordance with the parties' Security Agreement, and order Defendants to reimburse George Town's reasonable attorneys' fees and costs in bringing this motion.

### 1) The Court Should Appoint a Receiver Over MesoCoat in Accordance with the Security Agreement between the Parties

In accordance with the Security Agreement the parties executed (*see* Compl. at Ex. D, Dkt. 1), and as initially requested in George Town's Motion for Preliminary Injunction, the Court should appoint a receiver over MesoCoat to protect the Collateral of George Town's Secured Note. As a result of Defendants' blatant willingness to violate the Court's Preliminary

10

Injunction, the Court should exercise its broad discretion and appoint a receiver to protect George Town's interests in this litigation. *See CBS Broad., Inc. v. FilmOn.com, Inc.*, 10-cv-7532, 2013 U.S. Dist. LEXIS 130612, at *26 (S.D.N.Y. Sept. 10, 2013) ("Upon finding that a party is in civil contempt, this Court retains broad discretion to fashion an appropriate coercive remedy ... based on the nature of the harm and the probable effect of alternative sanctions.") (quoting *EEOC v. Local 28 of the Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333, 336 (2d Cir. 2001)).

Specifically, George Town requests appointment of a receiver *pendente lite* with such powers that are entirely limited by the parties' contractual agreements set forth in the Security Agreement. *See* Compl. at Ex. D. The Security Agreement between George Town, Abakan, and MesoCoat provides a number of rights and remedies available to George Town should a default occur, which include:

- Holding cash and payment obligations in trust for George Town;

- Taking possession of the collateral and, for that purpose, entering, with the aid and assistance of any person, any premises where the collateral is or may be placed and remove the same;

- Exercising discretion in all voting and consensual rights of MesoCoat, receiving cash dividends, interest, and other payments on the collateral, and exercising all rights with respect to the collateral as if it were the sole and absolute owner thereof;

- Operating MesoCoat's business using the collateral and to assign, sell, lease, or otherwise dispose of all or any part of the collateral, without demand upon or notice to MesoCoat;

- Notifying MesoCoat's account debtors and obligors to make payments directly to George Town, and enforcing MesoCoat's rights against such account debtors and obligors;

- Directing any financial intermediary or any other entity holding any investment property to transfer the same to George Town;

- Transferring all intellectual property registered in MesoCoat's name with the U.S. Patent and Trademark Office (or the U.S. Copyright Office) into George Town's name;
- Disposing of the collateral; and
- Using, licensing, or sublicensing any intellectual property owned by MesoCoat.

Compl. at Ex D.[4] Since Defendants expressly agreed that George Town would be entitled to such rights and remedies (among others) should a default occur, a receiver should be appointed over MesoCoat with such powers. *See Skaff v. Progress Int'l, LLC*, 12-cv-9045, 2014 U.S. Dist. LEXIS 152550, at *16-17 (S.D.N.Y. Oct. 28, 2014) (appointing receiver and noting such a remedy was provided for under security agreement).

Moreover, a "federal court has the power in equity to appoint a receiver in order to protect a party's interest in property" under Fed.R.Civ.P. 66. *Varsames v. Palazzolo*, 96 F.Supp.2d 361, 365 (S.D.N.Y. 2000). Indeed, "secured creditors ... clearly have an interest in the property on which they have a security interest that may provide a basis for convincing the court to appoint a receiver ... [in] any other action to enforce one or more outstanding liens." *See* 23 C. Wright, A. Miller, & R. Marcus, *Federal Practice and Procedure* § 2983 at *15 (2014). Because the Secured Note is secured by MesoCoat's assets, a receiver should be appointed for MesoCoat pending resolution of this dispute.[5]

---

[4] Each of the foregoing rights is expressly provided for by Sections 6.1, 7.1, and 7.2 of the Security Agreement. *Id.*

[5] "Whether a federal court should appoint a receiver in a diversity action is governed by federal law." *Varsames*, 96 F.Supp.2d at 365. Nearly identical to the considerations governing George Town's Motion for Preliminary Injunction, the applicable factors to consider for appointment of a receiver include, *inter alia*, "the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property." *United States SEC v. Amerindo Inv. Advisors, Inc.*, 05-cv-5231, 2013 U.S. Dist. LEXIS 49805, at *44-45 (S.D.N.Y. March 11, 2013) (reaffirming order appointing receiver) (citations omitted). George Town has already made such showings (as evidenced by the Court's grant of the Preliminary Injunction), and indeed, Defendants' violations of the Preliminary Injunction only serve to further such considerations.

In considering a receiver, George Town respectfully suggests this Court appoint Robert W. Seiden. Mr. Seiden is the founder and president of Confidential Security & Investigations, specializing in recovering, monitoring, and marshaling assets. Mr. Seiden has successfully conducted court-appointed receiverships and monitoring of public and private companies for the past eight years, being appointed by several different state and federal courts throughout the country. *See* Gross Decl. at Ex. B.

In the alternative, Defendants should be ordered to deposit the sum of $1,341,963.34 (the principal amount of the Secured Note) into the Court's Registry, or with a Court-appointed receiver pending the outcome of this litigation. This request is entirely reasonable considering Defendants obtained $1 million in cash as a result of the transaction violative of the Court's Preliminary Injunction (*see* Gross Decl. at Ex. A), as well as the fact that George Town brought claims seeking amounts in excess of this sum (*e.g.*, on-going interest, attorneys' fees, and costs). At the very least, the Court should require Defendants to deposit the $1 million in cash it recently obtained. Should Defendants not be ordered to post the bare minimum in dispute, there will be no assurances that Defendants will be able to pay any future award, or that George Town will be able to collect on a judgment. Indeed, George Town explicitly argued such irreparable harm would occur in its initial Motion for Preliminary Injunction, which the Court granted. In fact, it is this very consideration that caused the Second Circuit to reason that "preliminary injunctions are proper to prevent a defendant from making a judgment uncollectible." *Republic of Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir. 1986), *cert. dismissed*, 480 U.S. 942 (1987), *cert. denied*, 481 U.S. 1048 (1987).

### 2) George Town Should Be Awarded Its Attorneys' Fees and Costs

Defendants should also be ordered to reimburse George Town's reasonable attorneys' fees and costs in bringing this motion. *See Yurman Studio, Inc.*, 2009 U.S. Dist. LEXIS 13870, at *9 ("It is well settled in this Circuit that costs, including reasonable attorneys' fees, may be awarded to the party who prosecutes a contempt motion as an appropriate compensatory sanction for contumacious behavior.") (quoting *New York State Nat'l Org. for Women v. Terry*, 952 F.Supp.1033, 1043 (S.D.N.Y. 1997)). As a result of Defendants' violations of the Preliminary Injunction, George Town has been forced to expend resources to ensure compliance with the Court's orders, and to further protect its interests in this litigation. George Town's expenses are readily identifiable, and will be presented to the Court at a hearing on this matter.

### CONCLUSION

For the very reasons articulated in its initial Motion for Preliminary Injunction, George Town will suffer irreparable injury if Defendants are not required to comply with the terms of the Secured Note, and now, the Court's Preliminary Injunction. Yet again, Defendants have shown a propensity to breach unambiguous agreements, and have gone so far as to disregard this Court's clear directives in its Preliminary Injunction. Therefore, Defendants should bear the consequences of their actions.

For the foregoing reasons, Plaintiff respectfully requests the Court grant its Motion for Contempt and Appointment of Receiver, appoint a receiver over MesoCoat, or in the alternative, order Defendants to place the sum of $1,341,963.34 in the Court's Registry, award Plaintiff its attorneys' fees and costs in bringing this motion, and order such further relief as the Court deems just and proper.

GOETZ FITZPATRICK LLP
*Attorneys for Plaintiff, George Town Associates S.A.*

By: _____
    Douglas Gross (DG-5984)