UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :    15cv3435 (DLC)
GEORGE TOWN ASSOCIATES S.A.,           :
                                       :        OPINION
                    Plaintiff,         :    AND ORDER
                                       :
         -v-                           :
                                       :
ABAKAN, INC. and MESOCOAT, INC.,       :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X

APPEARANCES:

For Plaintiff:
Douglas Gross
Goetz Fitzpatrick LLP
One Penn Plaza, Suite 3100
New York, NY 10119

For Defendant:
Steven E. Rosenfeld
767 Third Avenue, 30th Floor
New York, NY 10017

DENISE COTE, District Judge:

        This action arises out of a secured promissory note issued
by defendant Abakan, Inc. ("Abakan") and backed by a guaranty of
performance and payment from co-defendant MesoCoat, Inc.
("MesoCoat") to plaintiff George Town Associates S.A. ("George
Town").  The plaintiff brings this motion for summary judgment
and also moves to dismiss the defendants' counterclaim for
breach of the implied covenant of good faith and fair dealing.
The defendants cross-move to add John Xinos ("Xinos") as a party

to this action.[1]  For the following reasons, the plaintiff's
motions for summary judgment and to dismiss the counterclaim are
granted.  The defendants' motion to add Xinos as a party is
denied.

**BACKGROUND**

This litigation arises out of the secured promissory note
issued by Abakan to George Town.  The facts underlying the
issuance of the secured note, and Abakan's subsequent
nonpayment, are undisputed.

## I. The Issuance of the Secured Promissory Note

Four documents, all dated April 28, 2014, govern the
transaction at issue in this litigation.  The first is the
secured promissory note ("Secured Note").  Abakan issued the
Secured Note to George Town in the principal amount of
$1,341,963.34.  A Securities Exchange Agreement ("SEA") governed
the issuance of the Secured Note.  The Secured Note was backed
by a Subsidiary Guaranty executed by MesoCoat ("Guaranty") and
secured by a perfected security interest on MesoCoat's assets
and property pursuant to an Amended and Restated Security
Agreement ("Security Agreement").  These documents are described
in turn.  All four documents contain a choice-of-law and choice-
of-forum provision that selects New York law as the governing

_____

[1] Xinos is also referred to in the parties' submissions as John
Xynos.

law and New York's state or federal courts as the appropriate forum.

### a. The Secured Note

Abakan issued the Secured Note in exchange for $1,341,963.34.  The maturity date under the Secured Note is April 27, 2015.  Article III of the Secured Note defines fifteen events as "events of default," and outlines the obligations of Abakan following an event of default.  Two events of default are at issue in this litigation.  The first, described in § 3.1 of the Secured Note, states that an event of default occurs when Abakan fails to pay the principal when due, either at maturity or upon acceleration, and does not cure such nonpayment within two days of receiving written notice of the nonpayment ("Nonpayment Notice").  The second, contained in § 3.9, defines an event of default as occurring when Abakan fails to comply with the reporting requirements of the Securities Exchange Act of 1934 and fails to cure such nonreporting within five days of receiving written notice from George Town ("Nonreporting Notice").[2]

---

2 The Secured Note uses, without defining, the terms "Exchange Act" and "Securities Act."  These terms are defined in the SEA which the parties reference in the Secured Note.  The SEA defines the term "Exchange Act" as referring to the Securities Exchange Act of 1934, 15 U.S.C. § 78a, and the term "Securities Act" as referring to the Securities Act of 1933, 15 U.S.C. § 77a.

Article III of the Secured Note describes the effect of an event of default on Abakan's obligations.  Article III provides that, following an event of default, the Secured Note becomes immediately due and payable upon delivery of written notice to Abakan by George Town ("Default Notice").  The Secured Note defines the amount Abakan must pay upon delivery of the Default Notice to include, _inter alia_, the sum of the outstanding principal of the Secured Note plus interest, and other fees owed to George Town ("Default Amount").

The Secured Note also describes the mechanics for giving notice under the Secured Note.  Section 4.2 states that "[a]ll notices . . . required or permitted hereunder shall be in writing and . . . shall be . . . transmitted by hand delivery [or any other method described in § 4.2]."  The notice is deemed effective "upon hand delivery."

The Secured Note also references the SEA and Security Agreement.  Section 4.8 states that "[b]y it's acceptance of this Note, each party agrees to be bound by the applicable terms of the [SEA]."  Section 4.9 provides for the same with respect to the Security Agreement.

**b. The SEA**

The SEA begins by explaining the factual background that led to the issuance of the Secured Note.  The SEA explains that, as of April 28, 2014, MesoCoat had five outstanding loans from

4

Kyrtos Limited ("Kyrtos") in an aggregate amount of $1,309,000 ("Existing Notes").  The Existing Notes were assigned to George Town, which exchanged the Existing Notes for the Secured Note and Guaranty.  In the SEA, Abakan and MesoCoat represented and warranted, inter alia, that they had the authority to enter into the transaction and that the governing documents were executed by authorized representatives from Abakan and MesoCoat.

### c. The Guaranty

The Guaranty was made by MesoCoat to George Town as a "condition to the transactions contemplated by the [SEA]."  The Guaranty provides that "[MesoCoat] hereby unconditionally guarantees to [George Town] the prompt payment . . . and performance of any and all indebtedness . . . of [Abakan] under the [Secured Note] . . . and to pay all fees . . . provided for in [the Guaranty]."

### d. The Security Agreement

The Security Agreement was executed by representatives from George Town and the defendants.  The Security Agreement serves to grant George Town a security interest in MesoCoat's assets. The Security Agreement provides that "[a]s an inducement for [George Town] to extend the loan as evidenced by the [Secured Note] and to secure a complete and timely payment . . . [MesoCoat] hereby unconditionally and irrevocably pledges, grants, and hypothecates to [George Town] a continuing perfected

security interest in and to . . . the Collateral."  The

"Collateral" is defined to include all of MesoCoat's assets and

property minus listed exceptions.

The Security Agreement defines an "event of default" to

include, <u>inter alia</u>, Abakan's failure to repay the full

outstanding principal balance of the Secured Note when due and

MesoCoat's breach of the Guaranty.  Upon the occurrence of any

event of default, George Town "shall have the right to exercise

all of the remedies conferred [under the Security Agreement] and

under the [Secured Note] . . . ."  Section 7 of the Security

Agreement grants George Town a number of rights and powers upon

default, including, <u>inter alia</u>, the right to take possession of

the Collateral, receive dividends and interest on the

Collateral, dispose of the Collateral, and operate the business

of MesoCoat.

## II. Abakan's Failure to file a Timely Quarterly Report or Repay the Secured Note

Two events of default occurred in 2015.  Abakan failed to

file a timely Quarterly Report with the SEC and failed to repay

George Town.

Abakan was required to file a Quarterly Report ("Form 10-

Q") with the SEC by April 14, 2015 for the period ending

February 28, 2015.  After filing a different form on April 14,

Abakan had five calendar days to file a Form 10-Q.  Abakan did

not file a Form 10-Q within the five allotted days.  On April 22, George Town hand-delivered a letter notifying Abakan that it had failed to file a timely Form 10-Q in violation of the Secured Note.[3]  The letter states that it "serves as [Nonreporting Notice]" and that within five business days of this notification, George Town will have the right to declare an event of default and accelerate the Secured Note.  On April 30, George Town hand-delivered a letter to Abakan stating that "the letter serves as Default Notice under Article III of [the Secured] Note . . . [and George Town] hereby declare[s] an Event of Default, accelerate[s] the [Secured] Note, and demand[s] default interest until fully paid . . . ."  Abakan filed a Form 10-Q with the SEC on May 4, 2015.

The maturity date of the Secured Note was April 27, 2015.  On April 28, George Town hand-delivered a letter to Abakan stating that Abakan had failed to pay the principal amount of the Note on its maturity date.  The letter states that it "serves as [Nonpayment Notice]" and that within two business days of the notice, George Town will have the right to declare

---

[3] With respect to this letter, and all subsequent letters sent by George Town to Abakan purporting to provide notice, Abakan disputes whether the letters provided adequate notice because the letters did not contain a telephone number, fax number, or email address for George Town although they do contain George Town's street address.  Abakan does not, however, dispute that it received the letters.

an event of default.  In response, Abakan sent a letter dated
April 28 to George Town asking for George Town's contact
information.

George Town hand-delivered a letter on May 1 to Abakan
stating that Abakan had failed to pay the principal amount of
the Secured Note.  The letter further states that it "serves as
Default Notice [and George Town] hereby declare[s] an Event of
Default, accelerate[s] the [Secured] Note, and demand[s] default
interest until fully paid . . . ."  George Town filed this
lawsuit on May 4.

## III. Abakan's Counterclaim and the Sonoro Litigation

In its answer, Abakan brings a counterclaim against George
Town for breach of the implied covenant of good faith and fair
dealing.  The factual basis for this allegation is drawn from
the counterclaim.

Xinos is an investor in Abakan and controls George Town.
Xinos also controls Sonoro Invest S.A. ("Sonoro"), which loaned
Abakan $1.7 million in 2013.

On October 1, 2014, Sonoro filed a lawsuit in the Southern
District of Florida against Abakan for breach of the promissory
note issued by Abakan to Sonoro.  As part of the Sonoro
litigation, Abakan agreed to the entry of a preliminary
injunction that precluded Abakan from acquiring new debt without
Sonoro's consent.  On April 23, 2015, Sonoro filed an emergency

motion for contempt to block Abakan from refinancing the George
Town Secured Note, which was due on April 27.  On April 30,
Sonoro consented to the refinancing of the Secured Note if
additional conditions were met.  On May 19, Sonoro and Abakan
stipulated to the dismissal of the case.

**IV. Litigation Before This Court**

George Town commenced this action against the defendants on
May 4, 2015.  The plaintiff brings six claims.  The first two
seek recovery on the Secured Note based on the defaults that
occurred when Abakan failed to file a timely Form 10-Q or repay
George Town.  A third claim seeks to recover from MesoCoat on
the Guaranty.  The plaintiff also requests a determination that
it is entitled to exercise its remedies under § 7 of the
Security Agreement, which would allow George Town to take
possession of MesoCoat's assets.  The plaintiff also sought
injunctive relief and the appointment of a receiver.

On May 6, this Court issued a Temporary Restraining Order
restraining the defendants from, inter alia, paying or declaring
any dividend or distribution, repurchasing or otherwise
acquiring any of the defendants' shares, incurring any
indebtedness, or selling, leasing or otherwise disposing of any
significant portion of assets "outside of its ordinary business
without George Town's consent . . . ."  On May 22, the May 6
temporary restraining order was converted on consent into a

preliminary injunction.  The defendants answered the complaint on May 27.  In its answer to George Town's complaint, Abakan brings nine affirmative defenses, three of which are of particular relevance to the instant motion.  Abakan asserts that George Town's claims are barred (1) because George Town "prevented Defendants' performance and repayment of the promissory note;" (2) by George Town's "breach of the implied covenant of good faith and fair dealing;" and (3) by "the doctrine of unclean hands."  The answer provides no additional factual allegations for these defenses.  The defendants also filed a counterclaim for breach of the implied covenant of good faith and fair dealing based on George Town's withholding in the Sonoro litigation of consent to the refinancing of the Secured Note.

As part of the defendants' opposition to George Town's motion for summary judgment, the defendants submitted a declaration from Robert Miller ("Miller"), the president of Abakan.  Miller states, <u>inter alia</u>, that discovery would show that George Town and Sonoro are related entities "who have acted in concert to contrive this alleged default, through their control person Xinos."  Miller further states that "in order to cause a delay and manufacture a default of the [Secured Note], so that [George Town] could obtain MesoCoat's valuable assets . . . through foreclosure, [George Town], through Xinos, caused

Sonoro to file an emergency motion for contempt seeking to block the . . . refinancing [of the Secured Note]."  Miller identifies twenty-eight categories of evidence that would prove that George Town, Sonoro, and Xinos are "related entities and colluded to cause the alleged default here in a nefarious scheme to take over [d]efendants' businesses."  The evidence sought includes, inter alia, communications and correspondence between George Town, Sonoro, and Xinos.

On June 18, the plaintiff moved for summary judgment and to dismiss the defendants' counterclaim.  On July 17, the defendants moved to add Xinos as a party.  The plaintiff's motion for summary judgment and to dismiss the counterclaim were fully submitted on July 24.

On July 27, Abakan entered into a transaction with its subsidiary, Powdermet Inc., wherein it acquired its own shares, shares of MesoCoat, cash, and equipment in exchange for a 20.5% ownership stake in Powdermet.  On July 28, the plaintiff filed a motion for contempt and the appointment of a receiver on the ground that the July 27 Powdermet transaction was in violation of the May 22 preliminary injunction.  A hearing was held on that motion on August 14, 2015.  Raymond Tellini, a member of Abakan's Board of Directors, and Stephen Goss, who serves both as Abakan's Chief Operating Officer and MesoCoat's Chief Executive Officer, testified at the hearing.  At the August 14

11

hearing, it was determined that George Town was entitled to the appointment of a receiver under § 7 of the Security Agreement. It was further determined that the defendants should be held in contempt for violating the preliminary injunction.  Robert Seiden was appointed as a receiver for MesoCoat.

**DISCUSSION**

## I. Plaintiff's Motion for Summary Judgment

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party.  Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).  Because injunctive relief has already been granted, and a receiver appointed, this Opinion only considers the plaintiff's motion for summary judgment of its claims seeking recovery under the Secured Note and Guaranty, and seeking a determination that it is entitled to exercise the remedies described in § 7 of the Security Agreement.

### a. The Secured Note

A promissory note is "a written engagement by one person to pay absolutely and unconditionally to another person therein

named, or to the bearer, a certain sum of money at a specified time or on demand." Carnwright v. Gray, 127 N.Y. 92, 99 (1891). A promissory note is "self-standing," that is, it "establishes the plaintiff's right to payment." Lyons v. Cates Consulting Analysts, Inc., 450 N.Y.S.2d 19, 20 (1st Dep't 1982), aff'd, 64 N.Y.2d 1025 (1985).  "To establish a prima facie entitlement to judgment as a matter of law in an action to recover on a promissory note, a plaintiff must show the existence of a promissory note, executed by the defendant, containing an unequivocal and unconditional obligation to repay, and the failure by the defendant to pay in accordance with the note's terms."  Ocean View Realty Co. v. Ziss, 935 N.Y.S.2d 75, 76 (2d Dep't 2011) (citation omitted); see also Novick v. AXA Network, LLC, No. 07cv7767 (AKH), 2009 WL 2753201, at *1 (S.D.N.Y. Aug. 27, 2009) ("Under New York law, which governs actions on the note . . ., the holder of a promissory note is entitled to judgment as a matter of law upon making a showing of execution and default, unless the obligor demonstrates the existence of a triable issue of fact."), aff'd Novick v. AXA Network, LLC, 642 F.3d 304 (2d Cir. 2011).

The plaintiff has, through undisputed evidence, met its burden to show that it is entitled to summary judgment with respect to its claims seeking recovery under the Secured Note. The Secured Note is a promissory note as defined under New York

law, the Secured Note was validly executed, and Abakan defaulted under the Secured Note.  Abakan did not file a timely Form 10-Q and did not pay the principal due on the Secured Note upon maturity.  The nonpayment and nonreporting are, provided George Town gives adequate notice, events of default that entitle George Town to declare a default and accelerate the loan.  The plaintiff properly provided Nonreporting Notice and Nonrepayment Notice, on April 22 and April 28, respectively.  Abakan did not cure either the nonreporting or the nonpayment in the time period prescribed by the Secured Note.  George Town then properly served Default Notices on Abakan on April 30 and May 1. George Town was subsequently entitled under the terms of the Secured Note to declare an event of default and accelerate the loan.  Abakan has not paid the Default Amount owed to George Town under the terms of the Secured Note.  The plaintiff has thus carried its burden to prove that it is entitled to recovery under the Secured Note.

The defendants argue that the Nonreporting, Nonpayment, and Default Notices were inadequate because they did not include a telephone number, fax number, or email address for George Town. This argument fails.  Section 4.2 of the Secured Note does not require the inclusion of such information in order for notice to be effective.  Section 4.2 requires only that notice be in writing and delivered in a manner specified in the Secured Note.

14

Hand-delivery, the method by which George Town sent its notices, is a method of delivery listed in the Secured Note.  Section 4.2 further specifies that notice is deemed effective upon hand delivery.  There is no dispute that George Town sent the notices by hand-delivery, and the defendants received these notices. George Town's notices satisfy the requirements set out in the Secured Note.

### i. Rule 56(d)

The defendants have failed to present any evidence in opposition to the plaintiff's motion for summary judgment.  The defendants primarily argue pursuant to Rule 56(d), Fed. R. Civ. P., that summary judgment is inappropriate prior to discovery.

Pursuant to Rule 56(d), where a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; [or] (2) allow time to . . . take discovery."  That declaration must detail, among other things, "what facts are sought" and "how these facts are reasonably expected to create a genuine issue of material fact."  Miller v. Wolpoff & Abramson, LLP, 321 F.3d 292, 303 (2d Cir. 2003) (citation omitted).

The defendants have failed to satisfy this burden under Rule 56(d).  The facts that the defendants seek to prove through

discovery do not raise a genuine issue of material fact preventing summary judgment.

All of the evidence the defendants identify as necessary to their defense is related to the purported connection between George Town, Sonoro, and Xinos.  They assert that George Town colluded with Sonoro and Xinos to cause Abakan's default by preventing Abakan from refinancing the debt owed to George Town.  The defendants argue that, if these facts were proven, it would establish three of the affirmative defenses pleaded in its answer: that George Town prevented defendants' performance and repayment of the promissory note, breached the implied covenant of good faith and fair dealing, and had unclean hands.  Given that the defendants do not dispute that the debts owed to both George Town and Sonoro are legitimate, it is difficult to discern how Sonoro's actions in the Southern District of Florida to enforce Abakan's obligations to Sonoro present any defense to Abakan's default here.  Even if Sonoro's actions may be attributed to George Town, George Town's refusal to consent to the refinancing of the Secured Note does not present a defense to Abakan's failure to pay the Secured Note or to MesoCoat's failure to guarantee such payment and performance.  And, the defendants have not cited a single case that suggests that a creditor on a promissory note is required to consent to refinancing.

Moreover, none of the defendants' allegations excuse Abakan's failure to timely file a Form 10-Q.[4]  Accordingly, the defendants have failed to show that discovery could reasonably be expected to yield evidence that would raise a genuine issue of material fact.[5]  The defendants' request to deny or defer the summary judgment motion pursuant to Rule 56(d) is denied.

**b. The Guaranty**

Under New York law, a guaranty is "the promise to answer for the payment of some debt or the performance of some obligation, on default of such payment or performance, by a third person who is liable in the first instance." <u>Terwilliger v. Terwilliger</u>, 206 F.3d 240, 246 (2d Cir. 2000) (citation omitted).  Guaranty agreements are to be construed under ordinary principles of contract construction.  <u>Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, 188 F.3d 31, 34 (2d Cir. 1999).  If

---

[4] In its opposition brief, the defendants claim that the delayed filing of the Form 10-Q was also caused by Sonoro but provide no evidence.  Defendants have not explained why this is so since such evidence would be within the defendants' control.  Accordingly, Abakan's contention that George Town caused the late filing is not considered further.

[5] Abakan argues, in a footnote, that the late filing of the Form 10-Q is not "material."  This argument is contradicted by the terms of the Secured Note, which states that an event of default occurs whenever Abakan fails to comply with the reporting requirements of the Securities Act of 1934 and cure such nonreporting within five days of receiving Nonreporting Notice.

the intent of the parties is clear from the four corners of a
guaranty, its interpretation is a matter of law that the court
may determine by summary judgment.  American Home Assur. Co. v.
Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 316 (2d Cir.
2006).  "Where . . . a creditor seeks summary judgment upon a
written guaranty, the creditor need prove no more than an
absolute and unconditional guaranty, the underlying debt, and
the guarantor's failure to perform under the guarantee."
Kensington House Co. v. Oram, 739 N.Y.S.2d 572 (1st Dep't 2002);
see also City of New York v. Clarose Cinema Corp., 681 N.Y.S.2d
251, 253 (1st Dep't 1998).

The plaintiff has met its burden of showing that it is
entitled to recover under the Guaranty.  It is undisputed that
the Guaranty was a "promise to answer for the payment of some
debt or the performance of some obligation, on default of such
payment or performance, by a third person who is liable in the
first instance."  Terwilliger, 206 F.3d at 246 (citation
omitted).  The Guaranty provides an explicit and unambiguous
promise of performance and payment: "[MesoCoat] hereby
unconditionally guarantees to [George Town] the prompt payment
. . . and performance of any and all indebtedness . . . of
[Abakan] under the [Secured Note] . . . and to pay all fees
. . . provided for in [the Guaranty]."  The existence of the
underlying debt -- the principal balance of the Secured Note --

and MesoCoat's failure to perform under the Guaranty are similarly undisputed.

Defendants present no evidence in opposition to the plaintiff's claim for recovery under the Guaranty.  Accordingly, summary judgment is granted in George Town's favor on George Town's action to recover under the Guaranty.

**c. The Security Agreement**

The plaintiff also seeks summary judgment on its claim seeking a declaration that, under the terms of the Security Agreement, the plaintiff is entitled to exercise the rights described in § 7 of the Security Agreement.  "A contract is unambiguous when the contractual language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion."  Keiler v. Harlequin Enterprises Ltd., 751 F.3d 64, 69 (2d Cir. 2014).  Where the language of the contract and the inferences to be drawn from it are unambiguous a district court may construe a contract as a matter of law and grant summary judgment accordingly.  American Home Assur., 446 F.3d at 316.

The Security Agreement unambiguously provides that Abakan's failure to pay the principal due on the Note and MesoCoat's breach of the Guaranty are events of default.  The Security Agreement further provides that, upon the occurrence of any event of default, George Town "shall have the right to exercise

all of the remedies conferred [under the Security Agreement] and under the [Secured Note] . . . ."  These rights include, <u>inter alia</u>, the right to take possession of the Collateral, receive dividends and interest on the Collateral, foreclose on the collateral, and operate the business of MesoCoat.  The terms of the Security Agreement are unambiguous and uncontested.  The Security Agreement may therefore be interpreted as a matter of law.

The plaintiff has shown that it is entitled to exercise the remedies described in § 7 of the Security Agreement.  George Town has established that the Security Agreement was validly made and its terms are unambiguous.  George Town has also proven that two events of default occurred: first, Abakan failed to pay the principal due on the Secured Note upon maturity and second, MesoCoat failed to ensure Abakan's performance and payment. Section 7 of the Security Agreement states that, upon the occurrence of any event of default, George Town is entitled to exercise the remedies described in § 7 of the Security Agreement.

The defendants have presented no evidence in opposition to the plaintiff's motion with respect to the Security Agreement. Summary judgment is therefore granted to the plaintiff.

## II. Plaintiff's Motion to Dismiss the Counterclaim

When deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint must do more than offer "naked assertions devoid of further factual enhancement."  Id. (citation omitted).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id.

"[T]here exists under New York law an implied covenant of good faith and fair dealing, pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990).  The implied covenant "is in aid and furtherance of other terms of the agreement of the parties."  Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 304 (1983).  The implied covenant, however, "can only impose an obligation consistent with other mutually agreed upon terms in the contract.  It does not add to the contract a substantive

provision not included by the parties."  Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005) (citation omitted).  Nor may "[a] claim for breach of the implied covenant of good faith and fair dealing . . . substitute for an unsustainable breach of contract claim."  Skillgames, LLC v. Brody, 767 N.Y.S.2d 418, 423 (1st Dep't 2003).

"The implied covenant does not undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's expected benefit.  The covenant will be breached only in a narrow range of cases."  Sec. Plans, Inc. v. CUNA Mut. Ins. Soc., 769 F.3d 807, 817 (2d Cir. 2014) (citation omitted); see also M/A-COM, 904 F.2d at 136-37 (holding that a party to a contract did not violate the implied covenant of good faith and fair dealing when it advanced its legitimate business interests in an unrelated transaction in such a way as to destroy the other party's expected benefit).  The narrow circumstances in which the implied covenant will be breached include situations where "an implied promise was so interwoven in the whole writing of a contract as to be necessary for effectuation of the purposes of the contract" or "a party's acts subsequent to performance on the contract so directly destroy the value of the contract for another party that the acts may be presumed to be contrary to the intention of the parties."  M/A-COM, 904 F.2d at 136 (citation omitted).

22

The main allegation in the defendants' counterclaim is that George Town, acting through Sonoro, refused to consent to the refinancing (unless Abakan met several conditions) of the Secured Note thereby causing the default.  Accepting the defendants' allegations as true, the defendants have failed to plead facts that would establish a claim for breach of the implied covenant.  The defendants have failed to plausibly allege either that George Town was obliged to consent, without conditions, to Abakan's proposed refinancing or that George Town was the cause of the defendants' default.

The terms and structure of the promissory note weigh heavily against finding an obligation to consent to refinancing. George Town assumed essentially no obligations to Abakan in the Secured Note, let alone an obligation not to pursue the enforcement of a separate debt or to consent to refinancing. The implied covenant of good faith and fair dealing cannot be used to bootstrap an obligation into a contract that was not contemplated by the parties and is not in furtherance of the obligations explicitly assumed by the parties.  Moreover, it is black-letter law that an implied covenant cannot be used to prevent a party to a contract acting in its own interests or from taking an action in a separate transaction that serves its legitimate interests even if that action deprives the other

party to the contract of the benefit of its bargain.  See M/A-COM, 904 F.2d at 136-37.

Furthermore, Abakan was not deprived of the benefit of its bargain.  Abakan received exactly what it bargained for: a loan of $1,341,963.34 for a term of one year.  The defendants cannot plausibly allege that the plaintiff's conduct has destroyed the value of the contract when they have received every benefit contemplated by the contract.

The defendants have also failed to plausibly allege that the plaintiff was the cause of Abakan's default.  The premise of the defendants' claim is that the plaintiff maliciously prevented Abakan from performing on the Secured Note.  The actual cause of Abakan's nonperformance, however, was Abakan's inability to pay the Secured Note.  The fact that the plaintiff could have made repayment easier, and chose not to, does not affect this conclusion.  Because the counterclaim is subject to dismissal for failure to state a claim upon which relief can be granted, this Opinion does not consider plaintiff's additional arguments in support of dismissal.

**III. The Defendants' Motion to Add Xinos as a Party**

As this Opinion concludes that the plaintiff is entitled to summary judgment and to dismissal of the defendants' counterclaim, it need not reach the question of whether Xinos

should be added to this action as a party.  The defendants'
motion to add Xinos as a party is denied.

## CONCLUSION

The plaintiff's June 18 motions for summary judgment and to
dismiss the defendants' counterclaim are granted.  The
defendants' July 17 motion to add Xinos as a party is denied.

Dated:    New York, New York
          August 18, 2015

_____
                  DENISE COTE
          United States District Judge