**United States District Court**
**Southern District of New York**

CASE NO.:  1:15-CV-03435-DLC

GEORGE TOWN ASSOCIATES S.A.,

        Plaintiff,

v.

ABAKAN, INC. and MESOCOAT, INC.,

        Defendants.

**FINAL STATUS REPORT REGARDING THE RECEIVERSHIP'S ACTIVITIES FROM DECEMBER 11, 2015 THROUGH AND INCLUDING April 4, 2016**

NOW COMES ROBERT W. SEIDEN, ESQ (the "Receiver"), as the court-appointed Receiver for Abakan, Inc. ("Abakan"), and MesoCoat, Inc. ("MesoCoat").  The Receiver respectfully submits this final status report and accounting regarding the receivership's activities from December 11, 2015 through and including April 4, 2016 (the "Report Period").

During the course of the Report Period, the Receiver has, among other things, done the following in order to fulfill the requirements of Your Honor's Order:

1. The Receiver has entered into and consummated the Satisfaction and Assignment Agreement presented to the Court on December 18, 2015, effective January 4, 2016.

2. The Receiver and his staff have maintained ongoing, albeit scaled-back, communication with the key management of MesoCoat, the lawyer for MesoCoat, Joseph Kozlowski, Esq., the Board of Directors, and others, ensuring that MesoCoat's assets have been preserved and that day-to-day operations have continued unabated in the normal course of business.  The work included convening and presiding over a Board of Directors meeting, communicating with

counsel, and reviewing certain correspondence and emails regarding company activities.

3. The Receiver has taken reasonable steps, despite substantial obstacles, to oversee the preservation of assets of Abakan and to otherwise maintain the status quo as outlined in this Court's orders.  Those efforts have included filing an 8K to inform the public that the receivership has concluded and fielding calls, correspondence, and emails from Abakan vendors.

4. Funds received by MesoCoat from GeorgeTown Associates S.A. under its senior secured loans were used to pay receivership expenses incurred by Abakan.  The Abakan-related expenses totaled approximately $84,000.  On March 25, 2016, Abakan executed and signed a promissory note payable to MesoCoat in the amount of $84,000, a copy of which is attached as **Exhibit A.**

5. On February 25, 2016, a Special Meeting of shareholders of MesoCoat was held, whereby a new slate of Board of Directors was duly elected.  A copy of the Board's meeting minutes is attached hereto as **Exhibit B.**

6. A final accounting for MesoCoat as of April 7, 2016 is attached hereto.  MesoCoat's Balance Sheet is attached hereto as **Exhibit C,** and MesoCoat's Income Statement is attached hereto as **Exhibit D.**

7. As reported in the Receiver's report of December 10, 2015 (Dkt. 255), the Receiver has not been provided with updated financials of Abakan, and the unaudited Balance Sheet, Accounts Payable, and Notes Payable List provided therewith are the most recent records that the Receiver has received.

2

8.  The total outstanding fees owed to the Receiver, Receiver's Counsel (including Florida bankruptcy counsel) and Receiver's valuation expert are $202,176.81, and the Receiver expects to receive final bills from counsel shortly.

The Receiver and his counsel remain available at the Court's convenience should the Court wish to discuss any of the forgoing or any other matter related to the receivership.

Thank you for the honor and privilege of serving Your Honor.

DATED:  April 11, 2016

Respectfully submitted,

Robert W. Seiden, Esq.,
Court-Appointed Receiver for MesoCoat, Inc. and Abakan, Inc.
1120 Avenue of the Americas, 4th FL
New York, NY 10036
212-626-6708

4819-9339-3187.1

# <u>EXHIBIT A</u>

## PROMISSORY NOTE

**Principal Amount:  USD$84,000**                **Issue Date: March 25, 2016**

FOR VALUE RECEIVED, ABAKAN INC., a Nevada corporation (hereinafter called the "Maker"), hereby promises to pay to the order of MESOCOAT INC., a Nevada corporation, or its registered assigns (as the case may be, the "Payee"), at such address as the Holder shall hereafter give to the Maker by written notice made in accordance with the provisions of this Note, or such other place as the holder hereof may designate in writing (the legal holder from time to time of this Note, including the Payee as the initial holder, are herein referred to as the "Holder") on demand the sum of Eighty-Four Thousand Dollars ($84,000.00), or so much thereof as may be outstanding from time to time and advanced to or for the benefit of Maker by Holder (hereinafter referred to as the "Principal Indebtedness"), together with interest thereon at an annual rate of ten percent (10%) per annum (hereinafter referred to as the "Interest Rate"), in accordance with the provisions hereinafter set forth. The advanced funds, expenses of Abakan, Inc. as detailed in the attachment "A", from MesoCoat Inc. for the benefit of Abakan Inc. were necessitated and paid pursuant to the receiver order and duly authorized duties of the receiver as set forth in court orders by the Honorable Judge Cote of the Southern District of New York. Any payment due hereunder shall be made in lawful money of the United States of America. Whenever any amount expressed to be due by the terms of this Note is due on any day which is not a business day, the same shall instead be due on the next succeeding day which is a business day. As used in this Note, the term "business day" shall mean any day other than a Saturday, Sunday or a day on which commercial banks in the city of Miami, Florida are authorized or required by law or executive order to remain closed.

This Note is free from all taxes, liens, claims and encumbrances with respect to the issue thereof and will not impose personal liability upon the Holder thereof.

The following terms shall apply to this Note:

### ARTICLE I. TERMS OF PAYMENT

1.1   <u>Terms of Payment</u>. All interest hereunder shall accrue at the Interest Rate and be payable at the time demand is made hereunder for payment of the Principal Indebtedness (the "Maturity Date"). Interest shall be calculated and applied on the basis of a 360-day year consisting of twelve 30-day months, except that interest for any partial month shall be calculated and applied on the basis of a 365-day year and the actual number of days in such partial month during which the Principal Indebtedness is outstanding.  On the Maturity Date, Maker shall pay to Holder the entire Principal Indebtedness then remaining unpaid, together with all accrued and unpaid interest thereon at the Interest Rate and any other charges due under this Note and that certain Security Agreement dated the date hereof by and between the Maker and the Payee (the "Security Agreement"). The period from and including the date hereof to the Maturity Date will be referred to, hereinafter, as the "Term".

### ARTICLE II. CERTAIN COVENANTS

2.1   <u>Distributions on Capital Stock</u>. So long as the Maker shall have any obligation under this Note, the Maker shall not without the Holder's written consent, which may be withheld for any reason

whatsoever, (a) pay, declare or set apart for such payment, any dividend or other distribution (whether in cash, property or other securities) on shares of capital stock or (b) directly or indirectly or through any subsidiary make any other payment or distribution in respect of its capital stock except for distributions pursuant to any shareholders' rights plan which is approved by a majority of the Maker's disinterested directors.

2.2   Restriction on Stock Repurchases. So long as the Maker shall have any obligation under this Note, the Maker shall not without the Holder's written consent, which may be withheld for any reason whatsoever, redeem, repurchase or otherwise acquire (whether for cash or in exchange for property or other securities or otherwise) in any one transaction or series of related transactions any shares of capital stock of the Maker or any warrants, rights or options to purchase or acquire any such shares.

2.3   Borrowings. So long as the Maker shall have any obligation under this Note, the Maker shall not, without giving advance notice to the Holder and obtaining the Holder's prior written consent, which consent may be withheld for any reason whatsoever, incur any indebtedness, or otherwise assume, guarantee, endorse, contingently agree to purchase or otherwise become liable for the indebtedness of any other person, firm, partnership, joint venture or corporation, or grant or suffer to exist any lien on its assets, except indebtedness to trade creditors or financial institutions incurred in the ordinary course of business, in an amount less than $25,000.00 and consistent with past practice.

2.4   Issuances of Equity. So long as the Maker shall have any obligation under this Note, the Maker shall not, without giving advance notice to the Holder and obtaining the Holder's prior written consent, which consent may be withheld for any reason whatsoever, issue any equity securities of the Maker, or any securities that are convertible, exercisable or exchangeable into equity securities of the Maker, except shares of common stock that are issuable (a) under any employee equity incentive plans in effect prior to the date of this Note, or (b) upon the exercise or conversion of securities that were outstanding prior to the date of this Note; provided that in each such case, issuances are made in accordance with the terms of the underlying plan or securities documents as in effect prior to the date of this Note and not pursuant to terms that have been amended after the date of this Note.

2.5   Sale of Assets. So long as the Maker shall have any obligation under this Note, the Maker shall not, without giving advance notice to the Holder and obtaining the Holder's prior written consent, which may be withheld for any reason whatsoever, sell, lease or otherwise dispose of any significant portion of its assets outside the ordinary course of business. Any consent to the disposition of any assets may be conditioned on a specified use of the proceeds of disposition.

2.6   Advances and Loans. So long as the Maker shall have any obligation under this Note, the Maker shall not, without giving advance notice to the Holder and obtaining the Holder's prior written consent, which consent may be withheld for any reason whatsoever, lend money, give credit or make advances to any person, firm, joint venture or corporation, including, without limitation, officers, directors, employees, subsidiaries and affiliates of the Maker.

## ARTICLE III. EVENTS OF DEFAULT

If any of the following events of default (each, an "Event of Default") shall occur:

3.1   Failure to Pay Principal Indebtedness. The Maker fails to pay the Principal Indebtedness hereof when due on this Note, whether on the Maturity Date, upon acceleration or otherwise.

3.2     Breach of Covenants. The Maker breaches any material covenant or other material term or condition contained in this Note and any collateral documents including but not limited to the Security Agreement.

3.3     Breach of Representations and Warranties. Any representation or warranty of the Maker made herein or in any agreement, statement or certificate given in writing pursuant hereto or in connection herewith (including, without limitation, the Security Agreement), shall be false or misleading in any material respect when made and the breach of which has (or with the passage of time will have) a material adverse effect on the rights of the Holder with respect to this Note or the Security Agreement.

3.4     [Intentionally deleted.]

3.5     [Intentionally deleted.]

3.6     Bankruptcy. Bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings, voluntary or involuntary, for relief under any bankruptcy law or any law for the relief of debtors shall be instituted by or against the Maker.

3.7     [Intentionally deleted.]

3.8     Failure to Comply with the Securities Act. Abakan shall fail to comply with the reporting requirements of the Securities Act of 1933 (the "Securities Act"); and/or the Maker shall cease to be subject to the reporting requirements of the Securities Act and such failure or ceasing continues for a period of five (5) business days.

3.9     Liquidation. Any dissolution, liquidation, or winding up of Maker or any substantial portion of its business.

3.10    Cessation of Operations. Any cessation of operations by Maker, or Maker admits it is otherwise generally unable to pay its debts as such debts become due, provided however, that any disclosure of the Maker's ability to continue as a "going concern" shall not be an admission that the Maker cannot pay its debts as such become due.

3.11    Maintenance of Assets. The failure by Maker to maintain any material intellectual property rights, personal, real property or other assets which are necessary to conduct its business (whether now or in the future) and such failure to maintain continues for a period of five (5) business days.

3.12    Financial Statement Restatement. The restatement of any financial statements filed by the Maker with the Securities and Exchange Commission for any date or period from two years prior to the Issue Date of this Note and until this Note is no longer outstanding, if the result of such restatement would, by comparison to the unrestated financial statement, have constituted a material adverse effect on the rights of the Holder with respect to this Note or the Security Agreement.

3.13    Cross-Default. Notwithstanding anything to the contrary contained in this Note or the other related or companion documents, a breach or default by the Maker of any covenant or other term or condition contained in the Security Agreement, after the passage of all applicable notice and cure or grace periods, shall, at the option of the Holder, be considered a default under this Note and the

*Page 3*

Security Agreement, in which event the Holder shall be entitled (but in no event required) to apply all rights and remedies of the Holder under the terms of this Note and the Security Agreement by reason of a default under Security Agreement or hereunder.

Then, upon the occurrence and during the continuation of an Event of Default specified in this Article III, the Note shall become immediately due and payable without demand, presentment or notice, all of which hereby are expressly waived, and the Maker shall pay to the Holder interest on all sums due hereunder at a rate (the "Default Rate") equal to the lesser of (i) the Interest Rate plus eight percent (8%) per annum, or (ii) the maximum rate permitted by law. The Holder shall be entitled to exercise all other rights and remedies available in binding arbitration. The Maker hereby waives any and all defenses to any Event of Default which may be declared by the Holder, except for payment in full of the Note at or prior to the Maturity Date.

### ARTICLE IV. MISCELLANEOUS

4.1    Failure or Indulgence Not Waiver. No failure or delay on the part of the Holder in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other right, power or privileges. All rights and remedies existing hereunder are cumulative to, and not exclusive of, any rights or remedies otherwise available.

4.2    Notices. All notices, demands, requests, consents, approvals, and other communications required or permitted hereunder shall be in writing and, unless otherwise specified herein, shall be (i) personally served, (ii) deposited in the mail, registered or certified, return receipt requested, postage prepaid, (iii) delivered by reputable air courier service with charges prepaid, or (iv) transmitted by hand delivery, telegram, or facsimile, addressed as set forth below or to such other address as such party shall have specified most recently by written notice. Any notice or other communication required or permitted to be given hereunder shall be deemed effective (a) upon hand delivery or delivery by facsimile, with accurate confirmation generated by the transmitting facsimile machine, at the address or number designated below (if delivered on a business day during normal business hours where such notice is to be received), or the first business day following such delivery (if delivered other than on a business day during normal business hours where such notice is to be received) or (b) on the second business day following the date of mailing by express courier service, fully prepaid, addressed to such address, or upon actual receipt of such mailing, whichever shall first occur. The addresses for such communications shall be:

If to the Maker, to:

Abakan Inc.
2665 S. Bayshore Drive
Suite 450
Miami, Florida 33133

If to the Holder:

MESOCOAT INC.
24112 Rockwell Drive
Euclid, Ohio 44117

With a copy to:

> GARMAN | TURNER | GORDON
> 650 WHITE DRIVE, SUITE 100
> LAS VEGAS, NV 89119
> Attention: Joe Kozlowski, Esq.
> E-Mail: jkozlowski@Gtg.legal
> Phone: 725-777-3000

4.3     Amendments. This Note and any provision hereof may only be amended by an instrument in writing signed by the Maker and the Holder. The term "**Note**" and all reference thereto, as used throughout this instrument, shall mean this instrument as originally executed, or if later amended or supplemented, then as so amended or supplemented.

4.4     Assignability. This Note shall be binding upon the Maker and its successors and assigns, and shall inure to be the benefit of the Holder and its successors and assigns.

4.5     Cost of Collection. If default is made in the payment of this Note, the Maker shall pay the Holder hereof costs of collection, including attorneys' fees.

4.6     Governing Law. This Note shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of laws. Any and all disputes, claims, or controversies arising out of or relating to this Note and/or other disputes by and between the Maker and the Holder, or the breach, termination, enforcement, interpretation or validity hereof, including the determination of the scope or applicability of this agreement to arbitrate in this Section 4.6 shall be exclusively determined by binding arbitration in New York, New York before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the expedited procedures in those rules, and there shall be only written discovery (*i.e.*, no depositions shall be had). Judgment on the award may be entered in any court having jurisdiction. The parties expressly consent, agree, and acknowledge that the arbitrator has the authority to provide provisional remedies to the parties. The prevailing party shall be entitled to recover from the other party its reasonable attorneys' fees and costs. In the event that any provision of this Note or any other agreement delivered in connection herewith is invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such statute or rule of law. Any such provision which may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provision of any agreement. Each party hereby irrevocably waives personal service of thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Note and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any other manner permitted by law.

4.7     Certain Amounts. Whenever pursuant to this Note the Maker is required to pay an amount in excess of the outstanding Principal Indebtedness (or the portion thereof required to be paid at that time) plus interest accruing at the Default Rate, the Maker and the Holder agree that the actual damages to the Holder from the receipt of cash payment on this Note may be difficult to determine and the amount to be so paid, by the Maker represents stipulated damages and not a penalty.

4.8    [Intentionally deleted.]

4.9    Remedies. The Maker acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Holder, by vitiating the intent and purpose of the transaction contemplated hereby. Accordingly, the Maker acknowledges that the remedy at law for a breach of its obligations under this Note will be inadequate and agrees, in the event of a breach or threatened breach by the Maker of the provisions of this Note, that the Holder shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Note and to enforce specifically the terms and provisions thereof, without the necessity of showing economic loss and without any bond or other security being required. The Maker expressly consents, agrees, and acknowledges that a JAMS-appointed arbitrator has the authority to provide such relief as described in this Section 4.9.

4.10   Usury. This Note is subject to the express condition that at no time shall the Maker be obligated or required to pay interest hereunder at a rate which could subject the Holder to either civil or criminal liability as a result of being in excess of the maximum interest rate which the Maker is permitted by applicable law to contract or agree to pay. If by the terms of this Note, the Maker is at any time required or obligated to pay interest hereunder at a rate in excess of such maximum rate, the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of this Note.

IN WITNESS WHEREOF, Maker has caused this Note to be signed in its name by its duly authorized officer as of the date first written above.

ABAKAN INC.

By: _____
    Robert W. Seiden, Esq.
    Court Appointed Receiver for Abakan, Inc.

# EXHIBIT B

**Special Meeting of Shareholders of Mesocoat, Inc.**

**Board Meeting Minutes:  February 25, 2016**

**10:30AM EST**

*Present:* Robert W. Seiden, Esq. as Receiver for Abakan Inc. and MesoCoat Inc., Craig Weiner, Esq. of Robins Kaplan LLP representing, via written proxy, shareholders Joseph T. Eberhard, George Town Associates S.A. and Sonoro Invest S.A., Nathaniel Francis as recording secretary on behalf of the Receiver.

*Absent:*  Paul Ammon, Ammon & Associates, Philip Graves, Warren Lydon, David van der Gulik, Vladimir Chernyakov

-The meeting was called to order by Robert Seiden.

-Robert Seiden conducted a roll call and stated that formal notice of the meeting was duly sent to all shareholders by Joseph T Kozlowski, Esq.

-Craig Weiner stated that the shareholders have only one item to discuss: the reconstitution of the Board of Directors.  He proposed the removal of the current board and replacement of them with three persons as the reconstituted board of directors of MesoCoat, Inc. The proposed board members are:  Raymond Tellini, Robert R. Messenger and Ioannis Kollias.

-Craig Weiner moved by verbal resolution that a vote be held to elect the new directors to replace the current board whose directorships will be terminated upon the vote.

-Robert Seiden asked for further details on the proposed board members.

-Robert Seiden, on behalf of Abakan, Inc. voted to abstain.

-Craig Weiner, on behalf of the shareholders he represents via proxy, voted in favor of the new board members identified above and declared that he believed there was plurality of votes in favor of the board members and that the resolution therefore passes.

-Robert Seiden announced that the resolution replacing the board with the above-identified members has passed.

-Robert Seiden asked if there was any further business, and hearing none, thanked all participants and adjourned the meeting.

Meeting adjourned at 10:40AM

Respectfully submitted,

2/26/16

Nathaniel Francis                                                                              Date
Recording Secretary

# EXHIBIT C

Case 1:15-cv-03435-DLC   Document 246-12   Filed 04/11/16   Page 14 of 23

# MesoCoat Inc.
# Balance Sheet
### As of April 7, 2016

| | Apr 7, 16 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 100-2 · Chase Bank | 41,912.09 |
| **Total Checking/Savings** | 41,912.09 |
| | |
| **Accounts Receivable** | |
| 110 · Accounts Receivable | 91,800.34 |
| **Total Accounts Receivable** | 91,800.34 |
| | |
| **Other Current Assets** | |
| **120-1 · Deposits/Retainers** | |
| 120-1a · Pritikin | 5,053.74 |
| 120-1 · Deposits/Retainers - Other | 3,672.42 |
| **Total 120-1 · Deposits/Retainers** | 8,726.16 |
| | |
| **120-5 · Intercompany - Mesocoat Canada** | |
| 120-5A · Intercompany - Mesocoat Tech US | 1,464,845.00 |
| 120-5B · Intercompany - Mesocoat Tech CA | 7,990.62 |
| 120-5 · Intercompany - Mesocoat Canada - Other | 1,955.00 |
| **Total 120-5 · Intercompany - Mesocoat Canada** | 1,474,790.62 |
| | |
| 120-6 · Intercompany - Mesocoat Mexico | 33,750.00 |
| 120-7 · Intercompany - Mexico Monthly | 160,000.00 |
| 121-00 · Inventory | 34,560.00 |
| **Total Other Current Assets** | 1,711,826.78 |
| | |
| **Total Current Assets** | 1,845,539.21 |
| | |
| **Fixed Assets** | |
| **125 · Fixed Assets** | |
| 125-1 · Computer Equipment | 22,405.25 |
| 125-2 · Office Furniture & Fixtures | 9,119.47 |
| 125-3 · Machinery & Equipment | 3,509,330.71 |
| 125-4 · Leasehold Improvements | 54,177.44 |
| 125-5 · Land - Building 3 | 440,000.00 |
| 125-6 · Building | 539,549.03 |
| **127 · WIP** | |
| 127-10 · Elnik Hydrogen Annealer | 60,670.27 |
| **127-11 · Building #3** | |
| 127-11n · Building # 3 - Phase II | 11,599.58 |
| 127-11o · Building # 3 - Phase II-Labor | 153,734.47 |
| 127-11 · Building #3 - Other | 112.65 |
| **Total 127-11 · Building #3** | 165,446.70 |
| | |
| 127-13 · Plasma ARC Lamp | |

Case 1:15-cv-03435-DLC   Document 246-12   Filed 04/11/16   Page 15 of 23

# MesoCoat Inc.
## Balance Sheet
### As of April 7, 2016

|  | Apr 7, 16 |
|---|---|
| **ASSETS** | |
| 127-13g · 127-13g PSU Darrah-Salary | 14,164.82 |
| 127-13b · Power Supply -Darrah | 87,713.95 |
| 127-13c · ID Lamp Head-200mm | |
| 127-13h · 127-13h ELID 200-Salary | 40,337.93 |
| 127-13c · ID Lamp Head-200mm - Other | 22,124.08 |
| **Total 127-13c · ID Lamp Head-200mm** | 62,462.01 |
| | |
| 127-13f · Vortek F/A # 167 | |
| 127-13i · 127-13i Vortek - Salary | 2,098.39 |
| 127-13f · Vortek F/A # 167 - Other | 49,333.50 |
| **Total 127-13f · Vortek F/A # 167** | 51,431.89 |
| | |
| **Total 127-13 · Plasma ARC Lamp** | 215,772.67 |
| | |
| 127-13j · Lamp Spares | 63,595.00 |
| 127-13l · Quincy Compressor QSI-235 | 105.00 |
| 127-13p · 40' Coating System Cart | 7,371.52 |
| 127-13q · 40' Fusion Cart | 23,080.31 |
| 127-13r · Niro Spray Dryer | 7,077.50 |
| 127-13s · Across Furnace # 2 FA # 196 | 22,267.95 |
| 127-15 · Caterpillar Lamp | -674.76 |
| 127-16 · EDM Machine-BLDG 3 | 2,400.61 |
| 127-19a · Mowry M5024 AVS Sintering Furna | 147,857.42 |
| 127-19b · Ingalls M5046 AVS Vacuum Furnan | 39,366.59 |
| 127-19d · Attritor 100S Mill | 10,352.96 |
| 127-19g · Material Handling Equipment | 12,618.38 |
| 127-19h · Dust Collector Misc | 8,148.54 |
| 127-19i · Evaporative Cooler | 10,452.56 |
| 127-19k · CMX DPX-6L Double Planetary Mix | 10,159.44 |
| 127-19m · 200 Compressor | 313.88 |
| 127-19o · Spray Booth System | 2,743.13 |
| 127-19p · Niro Spray Dryer # 2 | 3,394.23 |
| 127-23 · Building # 4 | |
| 127-23a · Building # 4 Capitalized Labor | 3,494.01 |
| 127-23b · Building # 4 | 21,648.01 |
| 127-23 · Building # 4 - Other | 1,132.46 |
| **Total 127-23 · Building # 4** | 26,274.48 |
| | |
| 127-28 · Drake Chiller 100 Ton | 37,477.34 |
| 127-29 · Niro Spray Dryer Used | 33,450.00 |
| 127-30 · Beach Russ Vac Pump | 5,322.45 |
| **Total 127 · WIP** | 915,044.17 |
| | |
| **130 · Accumulated Depreciation** | |

Case 1:15-cv-03435-DLC   Document 245-12   Filed 04/11/16   Page 16 of 23

# MesoCoat Inc.
# Balance Sheet
### As of April 7, 2016

|  | Apr 7, 16 |
|---|---|
| **ASSETS** |  |
| 130-1 · Accum Depr - Computer Equipment | -17,985.31 |
| 130-2 · Accum Depr - Office Furniture | -8,742.34 |
| 130-3 · Accum Depr - Machinery & Equip | -1,620,847.67 |
| 130-4 · Accum Amort - Leasehold Improv | -49,094.03 |
| 130-6 · Accum Depr - Building | -8,174.98 |
| **Total 130 · Accumulated Depreciation** | **-1,704,844.33** |
|  |  |
| **Total 125 · Fixed Assets** | **3,784,781.74** |
|  |  |
| **Total Fixed Assets** | **3,784,781.74** |
|  |  |
| **Other Assets** |  |
| 135 · Other Assets |  |
| 135-1 · Intellectual Technology |  |
| 135-1.2 · IP-Batelle Licensing | 12,204.40 |
| 135-1.3 · IP-MESO0102PCT "Clad" | 72,822.23 |
| 135-1.4 · IP-US2010/23097 | 5,079.00 |
| 135-1.6 · IP-Coat,Comp&Meth Hardface-NonS | 53,404.24 |
| 135-1.7 · IP-Nanocomposite Overlay | 83,785.37 |
| 135-1.8 · Mat/AP/Meth Additive Prod LAAMP | 861.50 |
| 135-1.9 · IP-Ternary Cerm Thermal PComp M | 57,695.43 |
| 135-1 · Intellectual Technology - Other | 143,381.37 |
| **Total 135-1 · Intellectual Technology** | **429,233.54** |
|  |  |
| 135-2 · Deferred Finance Costs | 8,573.12 |
| 135-5 · Deferred Loan Cost - IOLF | 16,676.15 |
| 140 · Accumulated Amortization |  |
| 140-1 · Accum Amort - Technology | -94,144.20 |
| 140-4 · Accum Amort - Def Ln Cost IOLF | -7,122.11 |
| **Total 140 · Accumulated Amortization** | **-101,266.31** |
|  |  |
| 140-2 · Accum Amort - Deferred Finance | -8,573.12 |
| **Total 135 · Other Assets** | **344,643.38** |
|  |  |
| **Total Other Assets** | **344,643.38** |
|  |  |
| **TOTAL ASSETS** | **5,974,964.33** |
|  |  |
| **LIABILITIES & EQUITY** |  |
| Liabilities |  |
| Current Liabilities |  |
| Accounts Payable |  |
| 200 · Accounts Payable | 702,968.03 |
| **Total Accounts Payable** | **702,968.03** |

Case 1:15-cv-03435-DLC   Document 246-12   Filed 04/11/16   Page 17 of 23

# MesoCoat Inc.
# Balance Sheet
### As of April 7, 2016

|  | Apr 7, 16 |
|---|---:|
| **LIABILITIES & EQUITY** | |
| **Other Current Liabilities** | |
| **205 · Gross Wages Payable** | 19,814.01 |
| **215 · Accruals** | |
| **215-1 · Accrued Workers Comp Insurance** | 2,962.44 |
| **215-3 · Accrued Vacation** | 18,657.85 |
| **215-5 · Accrued State/Local Income Tax** | 150.00 |
| **215-6 · Accrued Vol EE Repay Benefits** | -14,927.89 |
| **215-7 · Accrued Real Estate Taxes** | 2,106.96 |
| **Total 215 · Accruals** | 8,949.36 |
| | |
| **Total Other Current Liabilities** | 28,763.37 |
| | |
| **Total Current Liabilities** | 731,731.40 |
| | |
| **Long Term Liabilities** | |
| **220 · Long Term Liability** | |
| **220-20 · Notes Payable-Robins, Kaplan** | 415,000.00 |
| **220-2 · Magnet-Cuy Co Develop Loan** | 23,808.25 |
| **220-9 · Olympus - OmniScan MX2** | 3,123.62 |
| **220-10 · CAT Lease** | 69,543.71 |
| **220-11 · IOLF Note Payable** | 896,671.28 |
| **220-12 · Huntington Bank 150K Note** | 79,867.40 |
| **220-14 · Accrued Legal & Dev - Mattson** | 240,611.00 |
| **220-18 · Note Payable - Court Receiver** | 793,378.60 |
| **220-19 · Payable - Mesocoat Mexico** | 160,000.00 |
| **Total 220 · Long Term Liability** | 2,682,003.86 |
| | |
| **Total Long Term Liabilities** | 2,682,003.86 |
| | |
| **Total Liabilities** | 3,413,735.26 |
| | |
| **EQUITY** | |
| **225-1 · Common Stock** | 4,362.34 |
| **225-3 · Additional Paid In Capital** | |
| **225-3.1 · APIC-Warrants/Options** | 189,241.44 |
| **225-3.2 · Additional Paid in Capital-ABAK** | 10,366,437.67 |
| **225-3.3 · APIC - Cancelled Stock Options** | 6,268.78 |
| **225-3 · Additional Paid In Capital - Other** | 116,843.15 |
| **Total 225-3 · Additional Paid In Capital** | 10,678,791.04 |
| | |
| **225-4 · Retained Earnings** | -10,047,505.31 |
| **225-5 · Stock Issuable** | |
| **225-5A · Stock Issuable-Direct Pay ABKI** | 384,149.31 |
| **225-5B · Stock Issuable - MST Canada** | 93,990.00 |

Case 1:15-cv-03435-DLC   Document 246-12   Filed 04/11/16   Page 18 of 23

# MesoCoat Inc.
## Balance Sheet
### As of April 7, 2016

| | Apr 7, 16 |
|---|---|
| **EQUITY** | |
| 225-5C · Stock Repurchase for Notes, A/P | 1,090,358.39 |
| 225-5D · Stock Issuable - MST Mexico | 33,750.00 |
| 225-5 · Stock Issuable - Other | 2,381,621.26 |
| **Total 225-5 · Stock Issuable** | 3,983,868.96 |
| | |
| Net Income | -2,058,287.96 |
| **Total Equity** | 2,561,229.07 |
| | |
| **TOTAL LIABILITIES & EQUITY** | 5,974,964.33 |

# **EXHIBIT D**

Case 1:15-cv-03435-DLC   Document 216-12   Filed 04/11/16   Page 20 of 23

**MesoCoat Inc.**
# Profit & Loss
### January 1 through April 7, 2016

| | Jan 1 - Apr 7, 16 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| **230 · Revenue** | |
| **230-1 · Commercial** | 40,160.40 |
| **230-2 · Government** | |
| **230-5 · Other Government Revenue** | 75,996.13 |
| **Total 230-2 · Government** | 75,996.13 |
| | |
| **Total 230 · Revenue** | 116,156.53 |
| | |
| **Total Income** | 116,156.53 |
| | |
| **Cost of Goods Sold** | |
| **300 · Cost of Contracts** | |
| **300-01 · Direct Labor** | 47,886.13 |
| **300-04 · Materials** | 3,259.79 |
| **300-05 · Other Direct Costs** | 1,439.16 |
| **Total 300 · Cost of Contracts** | 52,585.08 |
| | |
| **Total COGS** | 52,585.08 |
| | |
| **Gross Profit** | 63,571.45 |
| | |
| **Expense** | |
| **400 · Fringe Benefits** | |
| **400-01 · FICA/Medicare** | 17,025.39 |
| **400-02 · FUTA** | 670.18 |
| **400-04 · SUTA** | 3,233.27 |
| **400-05 · Medical/Ancillary Insurance** | |
| **400-05A · Hospitalization** | 5,754.66 |
| **400-05B · Group, Disability, Vol D&V** | 1,049.00 |
| **Total 400-05 · Medical/Ancillary Insurance** | 6,803.66 |
| | |
| **400-06 · Vacation** | 16,296.22 |
| **400-07 · Sick Leave** | 3,169.87 |
| **400-08 · Holiday** | 1,113.14 |
| **400-09 · 401(K) Match - Employer** | 4,417.88 |
| **400-11 · Workers' Comp Insurance** | 3,362.43 |
| **400-14 · Recruiting Benefits** | |
| **400-14a · Immigration** | -1,268.78 |
| **400-14 · Recruiting Benefits - Other** | -2,160.00 |
| **Total 400-14 · Recruiting Benefits** | -3,428.78 |
| | |
| **Total 400 · Fringe Benefits** | 52,663.26 |
| | |
| **410 · Facilities** | |

Case 1:15-cv-03435-DLC   Document 245-12   Filed 04/11/16   Page 21 of 23

**MesoCoat Inc.**
# Profit & Loss
### January 1 through April 7, 2016

|  | Jan 1 - Apr 7, 16 |
|---|---|
| **Expense** | |
| **410-01 · Information Technology** | |
| **410-01a · Computer Supplies** | 79.88 |
| **410-01b · IT Software/Subscriptions** | 1,597.63 |
| **Total 410-01 · Information Technology** | 1,677.51 |
| | |
| **410-02 · Depreciation & Amortization** | |
| **410-021 · Depreciation** | 85,485.64 |
| **410-022 · Amortization** | 4,363.28 |
| **Total 410-02 · Depreciation & Amortization** | 89,848.92 |
| | |
| **410-03 · Equipment/Furniture Lease** | 388.65 |
| **410-04 · Insurance** | 1,462.88 |
| **410-05 · Rent** | 50,000.00 |
| **410-06 · Office Supplies** | |
| **410-06A · Office Supplies** | 661.79 |
| **410-06B · Facility / Internal Janitorial** | 320.73 |
| **Total 410-06 · Office Supplies** | 982.52 |
| | |
| **410-07 · Phone** | 4,368.11 |
| **410-08 · Postage & Shipping** | |
| **410-08A · Shipping Samples** | 936.90 |
| **410-08 · Postage & Shipping - Other** | 1,805.42 |
| **Total 410-08 · Postage & Shipping** | 2,742.32 |
| | |
| **410-09 · Utilities** | |
| **410-09A · Electric** | 36,921.69 |
| **410-09B · Gas** | 4,272.65 |
| **410-09C · Water & Sewer** | 828.14 |
| **Total 410-09 · Utilities** | 42,022.48 |
| | |
| **410-11 · Janitorial, Trash External Vend** | 1,084.21 |
| **410-12 · Repairs & Maint. Bldg. & Ground** | 405.00 |
| **410-13 · Property Tax** | 4,181.91 |
| **410-15 · Security** | 1,848.41 |
| **Total 410 · Facilities** | 201,012.92 |
| | |
| **420 · Indirect Support** | |
| **420-01 · Salaries** | 78,410.17 |
| **420-02 · Analytical Supplies** | 361.62 |
| **420-04 · Miscellaneous Shop Expenses** | 922.71 |
| **420-06 · Repairs & Maint-Equipt/Process** | |
| **420-06A · Misc. Equipment** | |
| **4206A1 · Buehler Saw** | 64.94 |
| **4206A4 · Quincy Compressor** | 586.07 |

Case 1:15-cv-03435-DLC   Document 246-12   Filed 04/11/16   Page 22 of 23

**MesoCoat Inc.**
# Profit & Loss
## January 1 through April 7, 2016

|  | Jan 1 - Apr 7, 16 |
|---|---|
| **Expense** | |
| 420-06A · Misc. Equipment - Other | -483.89 |
| **Total 420-06A · Misc. Equipment** | 167.12 |
| | |
| 420-06B · Pcomp Equipment | |
| 4206B3 · Beech Ross Vac Pump | 138.15 |
| 4206B5 · Across Furnace | 7.55 |
| 4206B6 · Large Sweeco 48" | 39.00 |
| 4206B7 · Attritor 10S | 179.06 |
| 4206B9 · Solvent Recovery | 336.56 |
| 4206B11 · Carbon Furnace | 340.75 |
| 4206B12 · Niro Spray Dryer | 6,157.78 |
| 4206B13 · DI - Water | 78.00 |
| 4206B15 · Compressor - SSR75EP Bldg 37 | 403.75 |
| 4206B18 · LECO Oxygen Analyzer | 272.24 |
| 4206B19 · Attritor 1S | 117.00 |
| **Total 420-06B · Pcomp Equipment** | 8,069.84 |
| | |
| 420-06D · Thermal Spray Equipment | |
| 4206D2 · JP Gun | 4,317.62 |
| **Total 420-06D · Thermal Spray Equipment** | 4,317.62 |
| | |
| 420-06 · Repairs & Maint-Equipt/Process - Other | 145.76 |
| **Total 420-06 · Repairs & Maint-Equipt/Process** | 12,700.34 |
| | |
| 420-07 · HS & Q | |
| 420-07a · HS&Q - Salary | 19,386.69 |
| 420-07 · HS & Q - Other | 222.30 |
| **Total 420-07 · HS & Q** | 19,608.99 |
| | |
| 420-08 · Small Tools & Equipment | 954.95 |
| 420-10 · Demurrage | 4,178.40 |
| 420-12 · Expendable Shop Supplies | -2,616.58 |
| 420-14 · Research & Development | |
| 420-14D · P-200 Salary | 32,111.80 |
| 420-14C · P-200 Other Direct Costs | 31,707.06 |
| 421101A · P-101 625 CRA-ODC | -12,181.65 |
| 421101B · P-101 625 CRA-Salary | 1,853.16 |
| 421102A · P-102 WR Dev - ODC | 649.12 |
| 421102B · P-102 WR Dev - Salary | 7,236.27 |
| 421107A · P-107 Lamp Development ODC | 38.68 |
| 421107B · P-107 Lamp Development - Salary | 485.08 |
| 421108A · P-108 Akron Eq Install-ODC | 727.12 |
| 421108B · P-108 Akron Eq Install - Salary | 8,231.77 |
| 421109A · P-109 Canada Eq Install ODC | 29,691.19 |

Case 1:15-cv-03435-DLC   Document 216-12   Filed 04/11/16   Page 23 of 23

**MesoCoat Inc.**
# Profit & Loss
### January 1 through April 7, 2016

| | Jan 1 - Apr 7, 16 |
|---|---|
| **Expense** | |
|     421109B · P-109 Canada Eq Install  Salary | 457.66 |
|     Total 420-14 · Research & Development | 101,007.26 |
| | |
|   Total 420 · Indirect Support | 215,527.86 |
| | |
|   430 · Sales & Marketing | |
|     430-03 · Conferences/Seminars Fees | 55.15 |
|     430-04 · Consultants | -2,000.00 |
|     430-06 · Travel | |
|       430-6A · Airfare | 2,691.52 |
|     Total 430-06 · Travel | 2,691.52 |
| | |
|     430-07 · Supplies | 639.76 |
|   Total 430 · Sales & Marketing | 1,386.43 |
| | |
|   440 · Finance & Administration | |
|     440-01 · Salaries | 38,091.73 |
|     440-02 · Accounting/Audit Fees | 878.88 |
|     440-03 · Bank Charges | 1,052.99 |
|     440-04 · Consultants | 760.00 |
|     440-05 · Legal Fees | -9,563.29 |
|     440-06 · Licenses, Fee & Permits | 175.00 |
|     440-07 · Payroll Service | 909.17 |
|     440-12 · Business Expenses/Meals | 5,488.67 |
|   Total 440 · Finance & Administration | 37,793.15 |
| | |
|   455 · Unallowables | |
|     455-02 · Interest Expense | 1,481.23 |
|   Total 455 · Unallowables | 1,481.23 |
| | |
|   6560 · Payroll Expenses | 0.00 |
|   Total Expense | 509,864.85 |
| | |
| **Net Ordinary Income** | -446,293.40 |
| | |
| **Other Income/Expense** | |
|   Other Income | |
|     235-5 · Other Income (Expense) | 348.00 |
|   Total Other Income | 348.00 |
| | |
|   Net Other Income | 348.00 |
| | |
| **Net Income** | **-445,945.40** |